DECISION
The matter before this Court is an appeal by Mark Cavanagh (plaintiff) from a decision by the Department of Children, Youth Families (DCYF). Plaintiff seeks to have this Court reverse the findings of a DCYF investigation. Jurisdiction in this Court is pursuant to R.I.G.L. 1956 (1993 Reenactment) § 42-35-15 (as amended).
Case Travel
On July 12, 1993, a complaint was made to the DCYF against plaintiff concerning his children Katie, then age 3, and Joel, then age 7. DCYF investigated the complaint and found sufficient facts to support the allegation of excessive/inappropriate discipline and lack of supervision/caretaker and the case was "indicated." By "indicating" the case, DCYF policy requires DCYF to inform the police department of the town where the plaintiff resides of the suspected abuse. Upon being informed that his case was "indicated" by DCYF, plaintiff appealed the finding to DCYF. On December 9, 1993 and January 25, 1994 formal hearings were held before a DCYF hearing officer to review the file and testimony of the parties involved. On February 23, 1994, the hearing officer issued a decision finding that there was sufficient credible evidence to support the DCYF findings. From this decision, the plaintiff appeals to this Court.
Case History
On June 29, 1993, plaintiff's marriage to Carolyn Cavanagh was dissolved by a Final Decree of Divorce.[1] Shortly after the divorce was finalized, Carolyn Cavanagh married David Wardrip. On or about July 9, 1993, Carolyn and David Wardrip returned from their honeymoon and had custody of plaintiff and Carolyn's two children, Joel and Katie, for the weekend. On July 11, 1993, when plaintiff went to his ex-wife's mother's home to pick up Joel and Katie, an altercation ensued among plaintiff, David Wardrip, and Carolyn Wardrip in front of Joel and Katie.[2] The next day, July 12, 1993, a complaint was made to DCYF stating that (1) the plaintiff had held Katie outside a second floor window as punishment for climbing on a window ledge and (2) that the plaintiff had left the children unsupervised when they swam in a lake that abuts plaintiff's property. Plaintiff has repeatedly denied these allegations.
The DCYF Child Protective Investigator assigned to the matter, David DiMauro (DiMauro), interviewed the children in the presence of Carolyn Wardrip and David Wardrip, in violation of DCYF's rules. On appeal, the hearing officer stated in his written decision that "[t]he investigation was not properly handled. Mr. and Mrs. Wardrip were allowed to be present during the questioning of the children." (Hearing Decision at 3). During this interview, Joel repeated the above allegations which were used to initiate the investigation. DiMauro later "indicated" the case.
On July 28, 1993, Thomas Tedeschi (Tedeschi) of DCYF interviewed Joel and Katie at plaintiff's home. At that time plaintiff allowed Tedeschi to interview the children individually. Although Katie was reported as "not very talkative," she did state she was well and happy. Joel was questioned concerning the window incident between his sister and his father. Joel stated that Katie was not held outside the window but rather that plaintiff had caught Katie climbing on the window ledge and thereafter held Katie up to the window with the screen and pane in place to emphasize to Katie why she should not climb on the ledge. Joel stated that he loves his father and wants to stay with him. Joel also stated that he loves his mother and would like to keep visiting her on weekends.
Despite Tedeschi's findings that the original allegations were unfounded, the hearing officer, after the hearing, found "sufficient credible evidence to support the findings" to "indicate" the case.
After the July 11 allegations were made to DCYF, and the investigation of plaintiff began, plaintiff also sought relief from the Family Court. Plaintiff stated in the Family Court proceedings that the allegations and the current dispute involving DCYF were initiated due to the negative relationship between plaintiff and David and Carolyn Wardrip and that the Wardrips were putting the children in the middle of the dispute, much to the detriment of the children. On September 29, 1993, General Master O'Brien issued an Order which provided in relevant part: "The plaintiff and David Wardrip shall refrain until further order of this court from involving DCYF in issues pertaining to the children, and shall, in the alternative, attempt to resolve any issues affecting the welfare of the children through counseling."
Standard of Review
A review of a final decision by a DCYF hearing officer by this Court is controlled by R.I.G.L. § 42-35-15(g), which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact.Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. Rhode IslandCommission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458.
Plaintiff's first argument is that the DCYF standard of "credible evidence" as proof for the determination of whether to "indicate" a case violates due process. This issue need not be addressed because it is well settled that this Court will "refrain from passing on a constitutional question when it is clear that the case before [this Court] can be decided on another point and that a determination of such a question is not indispensably necessary for a disposition of the case." McGee v.Stone, 522 A.2d 211, 215 (R.I. 1987) (citing State v. Berberian,80 R.I. 444, 445 98 A.2d 270, 270-71 (1953)).
Plaintiff's second argument is that there is a dearth of "credible evidence" to substantiate upholding the "indicating" of the case. The plaintiff is correct. It is evident from a review of the record in this case that there is not "substantial evidence" to uphold the hearing officer's findings. Although Joel originally stated that plaintiff held Katie out of a second story window as punishment for climbing on the bathroom window ledge, that version of the event was: (1) made in the presence of Carolyn and David Wardrip, parties who wish to adopt the children; (2) later recanted by Joel when he was interviewed alone, pursuant to policy; and (3) adamantly denied by plaintiff.
The record further indicates that the children's pediatrician finds the plaintiff to be a "very appropriate father" and has never had any indication to question the health or safety of the children under their father's care. The record also indicates that plaintiff's ex-sister-in-law told the Child Protective Investigator that when she brings her children to the plaintiff's lake shore home, plaintiff supervises his children. Also, Vicki L. Moss, Ph.D. and licensed psychologist, wrote in her conclusion of Mark Cavanagh that she had no reservations about his parenting abilities. She also described Mr. and Mrs. Wardrip as extremely hostile and aggressive people. The hearing officer stated that "[i]n her [Ms Moss'] twenty years as a psychologist she had never before had an experience such as she did with the Wardrips." (Hearing Decision at 3).
Despite the above evidence, the hearing officer deferred to the investigator's decision by concluding "[t]he record and testimony at hearing do indicate that the investigator, in accordance with the Department of Children Youth and Families' policy, continually weighed the reliability of and ascribed importance to each piece of information received during the investigative process." (Hearing Decision at 4). This finding does not correspond to the record nor the discussion section of the hearing decision in which the hearing officer stated that the investigator himself violated DCYF policy and interviewed the children in the presence of Mr. and Mrs. Wardrip. Furthermore, it was during this interview that Joel made his incriminating statement, a statement which was later recanted by Joel when interviewed pursuant to DCYF policy.
After a through review of the record, this Court finds that the decision of DCYF was clearly erroneous in view of the reliable, probative and substantial evidence. Accordingly, the February 8, 1994 decision of the DCYF is reversed.
Counsel for plaintiff shall submit the appropriate judgment for entry.
[1] The divorce decree awarded Plaintiff custody of the children from Sunday at 5 p.m. to Friday at 3 p.m. Carolyn Wardrip has visitation rights for the weekend.
[2] Plaintiff and Carolyn Wardrip adopted both Joel and Katie. It is alleged that during the altercation David Wardrip stated that plaintiff was not the children's real father, thereby leading Joel to question whom to refer to as "Dad." Thereafter, Joel has on occasion referred to plaintiff as "Mark" and David Wardrip as "Dad."