DECISION
The Rhode Island Department of Business Regulation (DBR), through its agent and director, Barry G. Hittner (Director), denied the insurance producer license applications submitted by Tyler Underwriting and Catherine Brady (Plaintiffs), and fined both parties pursuant to R.I.G.L. § 1956 27-2.3-1 et. seq. From that determination, plaintiffs filed a timely appeal under R.I.G.L. 1956 § 42-35-15.
Facts and Travel
A non-resident insurance producer license application (Old Application) was filed by Catherine Brady on July 12, 1993, pursuant to R.I.G.L. 23-3-1 et. seq. (Old Act),[1] and approved by the Department of Business Regulation on July 22, 1993. (Respondent's Exhibit E). Under the terms of the license (Old License), Brady was permitted to solicit business in Rhode Island until its expiration in June of 1996. During this same period of time, a comprehensive piece of legislation revamping the entire insurance licensing process was enacted. R.I.G.L. 1956 § 23-2.3-1 et. seq. (enacted on July 20, 1993). Under the terms of this new legislation, all insurance producers were required to obtain a license (New License) issued pursuant to and incorporating therein the revised guidelines set forth in Chapter 2.3. The requirements of this chapter were set to become effective on January 1, 1994. R.I.G.L. 1956 § 27-2.3-19.
On December 20, 1994, the DBR received a complaint from the Preston Agency alleging possible misconduct on the part of Tyler and its agent, Michael V. Ferreri.[2] (DBR Exhibit No. 1). In response to the DBR's inquiry, Catherine Brady, in her capacity as Tyler's president, sent a letter to the DBR and enclosed a copy of Tyler's license. The license sent by Brady was the Old License issued under R.I.G.L. 1956 § 27-3-1 et. seq. In response to this correspondence, DBR informed Brady that her Old License had been terminated pursuant to R.I.G.L. 1956 § 27-2.3.-1 et. seq. on January 1, 1994 and consequently, any solicitations made by Tyler or its agents in the State of Rhode Island after that date may have been in violation of the law. Subsequent correspondence between Brady and the department revealed that Tyler, Brady, and Ferreri were all unlicensed because they had failed to comply with the new licensing requirements of Chapter 2.3. In response to further DBR requests, Brady provided a list of eleven Rhode Island companies with whom Tyler had conducted business while unlicensed by the State. (DBR Exhibit No. 9).
On March 23, 1995, Brady sought to remedy this issue by applying for a new license under Chapter 2.3. Brady also filed an application on behalf of Tyler, Inc., and Michael Ferreri applied for a license on his own behalf. On September 26, 1995, the DBR responded with a notice indicating its intention to deny all three licenses. Thereafter the applicants retained counsel and requested a hearing.
After hearing at which testimony was presented by both sides, it was determined by the hearing officer: that the DBR was under no duty or obligation to notify Brady of the implications of the newly adopted licensing act; that Brady, Ferreri, and Tyler conducted business in Rhode Island without the appropriate licenses; and that the actions of the parties involved were of sufficient impropriety as to warrant the denial of both the Tyler and Brady license application and recommended all three parties be fined.[3] Based upon the above determinations, Director Hittner issued an order denying the Tyler and Brady producer license applications. The Director also fined Ferreri $500 and imposed upon both Tyler and Brady a fine of $2,750. (Agency Decision p. 13). From that decision, Brady and Tyler bring the instant appeal.
Standard of Review
This review is controlled by R.I.G.L. 1956 § 42-35-15(g), which provides that in the case of a review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I.G.L. 1956 § 42-35-15(g).
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. Rhode IslandCommission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. ofEmployment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, etal. v. Rhode Island Labor Relations Board. et al., 650 A.2d 479, 485 (R.I. 1994).
On appeal, plaintiffs first argue that the DBR was required to provide notice of both the New Act and the compliance requirements promulgated thereunder. The plaintiffs also claim that the present application of the New Act by the DBR was an unconstitutional violation of their right to due process.
With respect to notice, plaintiffs argue that under §42-35-3 of the Administrative Procedures Act (APA), any proposed rule change necessitates notice be given to interested parties and a forum for an exchange of views be provided. Moreover, plaintiffs argue that R.I.G.L. 1956 § 42-14-2(2) defines an interested party as any party subject to regulation thereunder. Notice, plaintiffs contend, would be sufficient if mailed to all interested parties pursuant to § 42-35-3.
The plaintiffs incorrectly apply § 42-35-3 of the APA concerning "Procedure For Adoption of Rules" to the instant matter. It is true that in order to satisfy the notice requirement of this statute, notification to interested parties via the mails is sometimes necessary. R.I.G.L. 1956 §42-35-3(a)(1). However, the APA is concerned solely with the procedures governing the actions of administrative agencies. SeeNew England Telephone and Telegraph Co. v. Fascio, 254 A.2d 758, 761 (R.I. 1969). The APA was designed to safeguard against arbitrary administrative actions. The procedural changes at issue herein and the violations associated therewith are related to statutory, rather than regulatory revisions. Therefore, plaintiffs' reliance on this statute is misplaced. Moreover, plaintiffs cite § 42-14-2 to support their proposition that notice must be sent to all interested parties. This section does mandate that the DBR provide notice to all interested parties, but only in the context of its regulatory and licensing enforcement functions. R.I.G.L. 1956 § 42-14-2.
With respect to due process, plaintiffs make a two pronged claim. They first argue that the DBR should have notified them of the New Act and its prospective implications. Plaintiffs further argue that before the Old License was declared null and void on January 1, 1994, a hearing was required.
After reviewing the entire record, this Court finds that the substantial rights of the appellants have not been prejudiced. With regard to plaintiffs' first claim, there exists no requirement that citizens be given specific notice of the impact of a new statute on property before that law may affect property rights. See Texaco, Inc. v. Short, 454 U.S. 516, 532, 102 S.Ct. 781, 793, 70 L.Ed.2d 738, 752 (1981). In the context of determining the validity of a revised Indiana statute restructuring the process of laying claim to mineral rights, the Supreme Court held due process dictates that:
 All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them; and when that procedure is not unreasonable or arbitrary there are no constitutional limitations relieving them from conforming to it.
Id. at n.25 (citing North Laramie Land Co. v. Hoffman, 268 U.S. 276, 283 (1925)). The legislature generally need do nothing more than enact and publish a law and provide its citizenry a reasonable opportunity to become familiar with its terms and comply therewith. Id. at 532. In the present case, no governmental entity was under any obligation to provide plaintiffs with notice of either the New Act or its implications. When the legislature enacted this legislation, it provided its citizenry almost six months, from July 20, 1993 to January 1, 1994, within which to come into compliance with its terms. The record indicates that plaintiffs did not object to the adequacy of this six month term. When determining the adequacy of a statutory grace period, the court should show the greatest deference to the judgment of the state legislature. Id. at 532. This Court defers to the legislature's determination that a six month period of time was more than sufficient for parties to familiarize themselves with the New Act. The responsibility for any failure to do so lies squarely on plaintiffs' shoulders.
The plaintiffs additionally claim that at some time before January 1, 1994,[4] due process mandated a hearing on the nullification of the Old License. The plaintiffs' second claim is also without merit. As the state was under no obligation to inform plaintiffs of the New Act's requirements, the absence of notice did not violate plaintiffs' due process rights. Moreover, plaintiffs did receive a hearing. Upon formally rejecting plaintiffs' producer licenses, the record reveals that the DBR complied with its statutory obligations and granted an administrative hearing pursuant to R.I.G.L. 1956 §§ 27-2.3-12 42-35-14.
The plaintiffs did business in the State of Rhode Island and had an affirmative obligation to keep abreast of relevant statutory developments that might impact their operations. The record reveals that they clearly failed to do so.
After an examination of the entire record, this Court finds that the substantial rights of the appellants have not been prejudiced. The DBR's March 7, 1996 decision is clearly supported by substantial evidence in the record and is therefore affirmed by this Court.
Counsel shall draft the appropriate order for entry.
[1] This provision has since been superceded by 23-2.3-1 et.seq. (New Act).
[2] Ferreri was subject to the same disciplinary proceedings as Tyler, Inc. and Brady. However, only Tyler, Inc. and Brady are parties to the instant appeal.
[3] The hearing officer recommended that Tyler and Brady each be fined $2,750 and that Ferreri's conduct warranted a $500 fine.
[4] Effective date of the New Act.