DECISION
On August 23, 1995, the Personnel Appeal Board (Board) issued a decision concluding that the Petitioner's (DiSano's) position at the Department of Children, Youth, and Families (DCYF) was improperly abolished as of September 1, 1991. From that determination, the petitioner filed a timely appeal pursuant to R.I.G.L. 1956 § 42-35-1 et. seq.
Facts and Travel
Both parties in the instant matter agree that in early 1991, the State of Rhode Island was faced with a severe financial crisis. At this time, DCYF employed the petitioner as Chief-Youth Development in the Division of Direct Services. On March 7, 1991, plaintiff received notice from DCYF that due to a severe shortage of funds, he was to be laid off from this position. This layoff was to be effective March 21, 1991 and would be of an indefinite duration (State's Hearing Exhibit 3). Subsequent to this notice Mr. DiSano made at least two written inquiries to Linda D'Amario-Rossi, Director of DCYF, regarding the possibility of reemployment within the department (Appellant's Hearing Exhibits 4 and 5). No reply to these inquiries was forthcoming.
The petitioner then appealed his layoff to the Personnel Appeal Board. The hearing commenced on May 21, 1992. Testimony was received on several occasions, finally concluding on December 14, 1993. After considering the testimony offered by the parties and reviewing the exhibits admitted into evidence, the Board issued a written decision on August 3, 1995. In this decision, the Board found that contrary to DCYF's assertions, the petitioner's position as Chief-Youth Development in the Division of Direct Services had been effectively abolished, even though it remained on the books at DCYF (Appellant's Exhibit B). The testimony offered by Ms. D'Amario-Rossi and others established to the Board's satisfaction that the petitioner's position was abolished effective February 1, 1991, and his duties and responsibilities dispersed to others within the department (Id.). The Board found this abolition to be in violation of both the laws of the State of Rhode Island and the Personnel Rules and ordered that Mr. DiSano be reinstated to his position as of February 1, 1991 (Id.). On August 23, 1995, the Board issued an amended decision in this matter. This decision rested upon the same evidentiary foundation cited by the Board on August 3, 1995. However, the amended decision found the effective date of the abolition to be September 1, 1991, rather than February 1, 1991, and accordingly ordered reinstatement as of that date (Appellant's Exhibit C). From this determination, the petitioner filed the instant appeal on September 1, 1995.
Standard of Review
This Court's review of the Board's decision is controlled by R.I.G.L. 1956 § 42-35-15 (g), which provides that in the case of a review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I.G.L. 1956 § 42-35-15 (g). This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of MotorVehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I.Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision.Newport Shipyard v. Rhode Island Commission for Human Rights,484 A.2d 893, 897 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. NewportShipyard, 484 A.2d at 897. (quoting Caswell v. George ShermanSand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. of EmploymentSecurity, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record."Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I.Conflicts of Interests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
The Agency Decision
Petitioner argues that the Board's decision is completely unsupported by the evidence in this case. Petitioner claims that the Board, in seeking to act equitably and "splitting the baby,"[1] effected an improper outcome that must be overturned. The Board argues that regardless of the motives behind its actions, its decision must be upheld if supported by the evidence on the record. For the following reasons, this Court affirms the decision of the Personnel Appeal Board.
After the Board issued a second amended decision, the petitioner filed the instant appeal. This amended decision was necessitated by what appears from the record to be nothing more than a clerical error. During the administrative proceedings, the uncontroverted evidence established that the petitioner was laid off on March 21, 1991 (State's Hearing Exhibit 3). The Board's first written decision indicated that February 1, 1991 was the effective abolition date of the petitioner's position (Appellant's Exhibit B). Such a determination was clearly erroneous. The petitioner's job could not be considered abolished if he was still working at it, as would have been the case on February 1, 1991. On August 1, 1995, the Board set forth its findings of fact verbally. Therein, the Board indicated that it considered September 1, 1991 to be the effective date of abolition (8/1/95 Transcript at 2). Moreover, the Board ordered this finding incorporated into its written decision (Id.). The subsequent substitution of February 1, 1991 for September 1, 1991 in the first written decision is contrary to the Board's formal determination and clearly erroneous in light of the evidence contained in the record.
R.I.G.L. § 36-4-59 (2) provides that ". . . in case of the abolition of a position through reorganization or otherwise, the incumbent in that position . . . shall be retained within the state services in a position of similar grade." R.I.G.L. 1956 § 36-4-59. The term "abolition" is not explicitly defined in § 36-4-59. However, the Supreme Court has had occasion to consider this term's meaning in a similar context. In weighing the propriety of the dismissal of the sheriff of Newport County, the court indicated that "abolition" refers only to the elimination of an entire job, not the termination of a state employee's service in a particular position. See Casey v.Sundlun, 615 A.2d 481, 482 (R.I. 1992). In Casey, the court was interpreting R.I.G.L. 1956 § 36-5-7 (2). That statute was specifically crafted to apply only to veterans but is otherwise identical in every respect to § 36-4-59 (2).
In the instant matter, this Court finds substantial support in the record for the Board's conclusion that Mr. DiSano's position was effectively abolished. This abolition was neither explicit nor immediate. Rather it was a gradual and de facto
elimination of the petitioner's position. The evidence establishes that as of March 21, 1991, the Petitioner was laid off due to the State's severe financial crisis, and his duties dispersed among other DCYF employees (State's Hearing Exhibit 3). Initially, this action was an appropriate personnel action pursuant to R.I.G.L. 1956 § 36-4-37. However, the board concluded that at some point, this temporary layoff was transformed into an impermissible abolition of the petitioner's position. As evidence in support of this conclusion, the Board cites the testimony of witnesses, including Ms. D'Amario-Rossi, as well as certain exhibits submitted by the parties. State's exhibit 6 details the prelayoff structure of the petitioner's department as well as the proposed postlayoff administrative hierarchy (8/15/93 Transcript at 11 and State's Hearing Exhibit 6). This proposed administrative structure was never implemented, but the document itself sheds some light on the managerial directives issued by DCYF administrators. This Court finds that this document reveals the DCYF's intention to abolish the petitioner's position as Chief of Youth Development.
The Board's conclusion that the decision to abolish the petitioner's position manifested itself at some time after the March 21, 1991 layoffs, and specifically, on September 1, 1991 is likewise supported by the evidence of record. The petitioner urges this Court to find that the abolition occurred on the date Mr. DiSano was laid off. However, the testimony of the DCYF administrators in conjunction with the documentary evidence submitted to the Board, supports the inference that at some point after March 21, 1991, DiSano's temporary layoff was transformed into a permanent abolition. While conceding that it was difficult to determine the precise date at which the temporary layoff became a permanent abolition, the Board made a determination that the decision to formally abolish the petitioner's position arose at some time after the start of the new fiscal year. In determining that this action occurred on September 1, 1991, the Board considered the evidence presented before it.
This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo, 434 A.2d at 272. Such is not the case in this instance. No testimony was presented which, in and of itself, establishes the exact date at which the decision to abolish the petitioner's position was made. However, the Board is certainly empowered to draw reasonable inferences from the evidence presented before it. See RhodeIsland Public Telecommunications Authority, 650 A.2d at 485. Under the APA, a reviewing court is prohibited from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa, 543 A.2d at 1309. There being no evidence which establishes that the Board's decision was either clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or arbitrary or capricious or characterized by abuse of discretion such that the substantial rights of the petitioner have been prejudiced, this Court affirms the decision rendered by the Personnel Appeal Board.
Counsel shall submit the appropriate judgment for entry.
[1] The Petitioner uses the term "splitting the baby" to refer to the Board's choice of an abolition date of September 1, 1991. This date falls almost exactly halfway between the petitioner's layoff date of March 21, 1991 and his reemployment date of February 2, 1992.