DECISION
The plaintiff, Yolanda E. Allen (plaintiff), appeals the June 8, 1997 decision of the full Retirement Board of the Employees' Retirement System of Rhode Island (hereinafter Retirement Board) which denied her application for accidental disability pension benefits from the Retirement System for the State of Rhode Island. This Court possesses jurisdiction of this appeal pursuant to G.L. § 42-35-15.
Facts
The record reveals that the plaintiff, Yolanda E. Allen, began working for the State of Rhode Island in 1983 as a Youth Correctional Officer at the Department of Children, Youth and Families. In 1984, she was transferred to the training school where she worked as a Juvenile Program Worker until September 8, 1990, when, while on duty, a metal door swung open swiftly and struck her right knee. Plaintiff has not worked since that date. Plaintiff alleges that her present disability is a direct result of knee injuries sustained in that incident. On May 30, 1995, plaintiff applied for accidental disability retirement benefits as provided for by the Employees' Retirement System. In its letter of September 14, 1995, the Employees' Retirement System of Rhode Island notified the plaintiff that, upon the recommendation of its Disability Subcommittee, the Retirement Board denied her application for benefits. The Disability Subcommittee reconsidered the plaintiffs application and, on January 11, 1996, once again denied her application for benefits. Plaintiff appealed that decision to the full Retirement Board. At a hearing before the full board on February 21, 1996, the board remanded the application to the Disability Subcommittee for further review of the medical records. On July 11, 1996, the Disability Subcommittee denied her application. The Retirement Board affirmed this denial in its written decision of January 8, 1997. The Retirement Board based its decision upon the recommendation of the Disability Subcommittee which, after reviewing the medical reports and related documentation, determined that a causal connection did not exist between the incident of September 8, 1990, and the claimed disability. (See letter of July 11, 1996 from Joann Flaminio, Executive Director of Employees' Retirement System). Plaintiff filed the instant timely appeal.
Standard of Review
Rhode Island General Laws § 42-35-15(g) controls this Court's review of the Employees' Retirement System's decision and provides, in relevant part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court must limit its review to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). The Court defines "substantial evidence" as that quantum of evidence which a reasonable mind might accept to support a conclusion. Id. at 897. (Quoting Caswell v. George ShermanSand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This applies even in cases where the Court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. ofEmployment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, the reviewing court does not accord the same level of deference to an agency's determination of questions of law, which the Court may freely review to ascertain what the law is and its applicability to the facts. Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458. The Superior Court must uphold the agency's findings and conclusions if competent evidence in the record supports them. Rhode Island Public Telecommunications Authority et al. v.Rhode Island Labor Relations Board. et al., 650 A.2d 479, 485 (R.I. 1994).
Analysis
Rhode Island General Laws § 36-10-14 governs the eligibility for accidental disability retirement benefits, and provides as follows:
 "Retirement for accidental disability (a) Medical examination of an active member for accidental disability, and investigation of all statements and certificates by him or her or in his or her behalf in connection therewith, shall be made upon the application of the head of the department in which the member is employed or upon application of the member, or of a person acting in his or her behalf, stating that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and certify the definite time, place, and conditions of the duty performed by the member resulting in the alleged disability, and that the alleged disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member should, therefore, be retired.
 (b) Such application shall be made within five (5) years of the alleged accident from which the injury has resulted in the members present disability, and shall be accompanied by an accident report and a physician's report certifying to the disability; provided, that, if the member was able to return to his or her employment and subsequently re-injures or aggravates the same injury, the application shall be made within the later of five (5) years of the alleged accident or three (3) years of the re-injury or aggravation.
 (c) If a medical examination conducted by three (3) physicians engaged by the retirement board, and such investigation as the retirement board may desire to make, shall show that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and that the disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member has not attained the age of sixty-five (65), and that the member should be retired, the physicians who conducted the examination shall so certify to the retirement board stating the time, place, and conditions of service performed by the member resulting in the disability, and the retirement board may grant the member an accidental disability benefit. (Emphasis added)."
On appeal, the plaintiff contends that the Retirement Board erred when it denied her application. Specifically, the plaintiff argues that a causal connection does, in fact, exist between the incident of September 8, 1990 and her claimed disability. The defendant counters that the plaintiff failed to satisfy the above statute's multi-pronged test to qualify for an accidental disability pension; that the plaintiff's qualification for workers' compensation benefits is irrelevant to her claim for accidental disability retirement benefits; and that, ultimately, the plaintiff failed to meet her burden to demonstrate that her claimed disability is the direct result of the injuries suffered in the September 8, 1990 incident and not the result of age or length of service, as required by G.L. 1956 § 36-10-14. Consequently, the defendant argues that the evidence presented before the board supports the board's denial of accidental disability retirement benefits.
Uncontradicted evidence exists in the record to demonstrate that the incident occurred while the plaintiff was on duty at the training school. The evidence also indicates that she sustained a knee injury as a result of the incident. These facts alone, however, do not entitle plaintiff to accidental disability benefits under G.L. 1956 § 36-10-14. The statute clearly requires the three physicians engaged by the Retirement Board, after conducting the medical examinations, to determine a causal relationship between the member's incapacity and the on-duty accident. Id. In the instant matter, the three physicians initially engaged by the Retirement Board to examine the plaintiff did not conclude that the plaintiffs incapacity was a natural and proximate result of the accident.
David A. Marcoux, M.D., examined the plaintiff. In a report dated August 15, 1995, the physician reported the following:
 "My clinical sense is that the mechanism of injury that she describes ie: force striking the anterior aspect of her knee should not result in such a terrible disability . . . My sense is that she is not knowingly malingering but perceives herself as having a disability. I do not agree however that indeed as [a] disability is present at least on a medical grounds. I believe that this may be one of those unfortunate circumstances where perceived disability has prevented appropriate rehabilitation and return to work . . . At this point it is my medical opinion that she is not disabled nor in the event that a disability is indeed awarded that the injury she describes not be considered the approximate cause of her current problem."
The second physician engaged by the Retirement Board to examine the plaintiff, Kenneth Morrissey, M.D., reported the following on July 31, 1995:
 "The patient's injury of September 8, 1990 as she described to me today when she had an injury when a door fell and struck her was the cause of her knee symptoms but from what I could gather from her history the back was not related to this and was not work related . . .
 At this time I do not think her knee alone would disable her from her usual job. I would let her go back to her regular job . . . in regard to her knee. However, the back is a significant problem and a significant cause of her disability . . . apparently from what she tells me the back was not a work-related injury and I cannot tie the back portion of her injury to her occupational injury."
The third physician to examine the plaintiff, Stanley Stutz, M.D., reported right knee weakness "secondary to patellofemoral arthritis." Dr. Stutz opined, based upon the plaintiffs history, that the findings in her right knee and left knee were "a combination of both the incident and the underlying arthritic changes at the patellofemoral joint."
Later, Dr. Morrissey's opinion was replaced with that of Edward Spindell, M.D., who, on June 11, 1996, reported the following:
 This patient displays many hyper-reactive and inappropriate responses suggesting an exaggerated and disproportionate degree of impairment of physical function. She does have longstanding and probably pre-existing degenerative osteoarthritis of the lumbosacral spine. . . .
 CAUSAL RELATIONSHIP: The patient related her complaints to a job injury of September, 1990. I feel quite confident that her symptoms are part and parcel of progressively advancing osteoarthritis of both knees and her low back secondary to obesity. I do not believe that the incident of 1990 aggravated the patient's underlying osteoarthritis on a permanent basis. Historically, at most, she probably sustained an acute contusion of her right knee and possibly an acute lumbosacral sprain, both of which are self-limiting over a four to six week period.
Ultimately, only one physician engaged by the Retirement Board, Dr. Stutz, certified to the board that the plaintiffs disability might, in part, be the natural and proximate result of the accident. However, in their respective "Physician Statement[s] for Disability Retirement," neither Dr. Marcoux, Dr. Morrissey, nor Dr. Spindell could certify to the board that the applicant's disability was the result of the accident. Because three of the physicians retained by the board could not certify that the plaintiff's incapacity was the natural and proximate result of the September 8, 1990 incident, the plaintiff failed to satisfy the requirement of G.L. § 36-10-14. Thus, the board concluded that the plaintiff was not entitled to receive the requested benefits.
Although the plaintiff points to other medical evidence in the record which, plaintiff alleges, may indicate a causal relationship between plaintiff's disability and the accident, G.L. 1956 § 36-10-14 (c) does not require the Retirement Board to consider medical evidence beyond the reports of the three physicians engaged by the board. Furthermore, the Disability Subcommittee recommended a denial of benefits. This Court notes that the Retirement Board had an obligation to accord great deference to the Disability Subcommittee's findings of fact.Environmental Scientific Corporation v. Durfee, 621 A.2d 200
(1993).
Accordingly, after a careful review of the entire record, this Court finds that substantial evidence exists in the record to support the board's January 8, 1997 affirmance of the Disability Subcommittee's denial of accidental disability benefits to the plaintiff. This evidence includes the reports of the three physicians engaged by the Retirement Board to examine the plaintiff, as well as the Disability Subcommittee's recommendation to deny benefits. Furthermore, this Court finds that substantial rights of the plaintiff have not been prejudiced.
This Court affirms the January 8, 1997 decision of the Employees' Retirement System for the State of Rhode Island.
Counsel shall prepare the appropriate judgment for entry.