Thomas M. CARMODY

v.

RHODE ISLAND CONFLICT OF INTEREST COMMISSION.

Carol P. LUBY

v.

RHODE ISLAND CONFLICT OF INTEREST COMMISSION.

Nos. 83–381–M.P., 84–414–M.P.

Supreme Court of Rhode Island.

May 20, 1986.

Joseph R. Palumbo, Jr., Palumbo, Galvin & Boyle, Middletown, Frank J. Cenerini, Asst. City Solicitor for City of Warwick, for petitioner.

Teresa M. Quinn, Quinn & Quinn, Providence, for respondent.

## OPINION

SHEA, Justice.

These consolidated petitions for certiorari seek review of two Superior Court decisions affirming separate decisions and orders of the Rhode Island Conflict of Interest Commission (commission). The commission found that the petitioners, Thomas M. Carmody and Carol P. Luby, had violat-

ed the Rhode Island Conflict of Interest Law and it assessed fines against each of them pursuant to the civil-enforcement provision in the Conflict of Interest Law, G.L. 1956 (1984 Reenactment) § 36–14–13. The principal issue before the court is whether the violations were committed knowingly and wilfully. We affirm the decisions of the Superior Court but vacate the assessment of the fine against Luby.

For the sake of clarity, we shall set out the underlying facts relating to each petition separately, beginning with petitioner Carmody. Under § 36–14–15, all state or municipal elected or appointed officials must file an annual financial statement with the commission.[1] Carmody was appointed by the Narragansett Town Council to the Narragansett Redevelopment Agency (agency) on March 5, 1979. At that time, he was already the chairperson of the Rhode Island Higher Education Assistance Authority (RIHEAA or authority) and was contesting a commission advisory opinion ruling that authority members were subject to the filing requirement of § 36–14–15. Before his appointment to the redevelopment agency, Carmody asked the Narragansett Town Council president whether, as a member of the agency, the Conflict of Interest Law would require him to file financial statements with the commission. The town council president told Carmody about this court's decision in *Little v. Conflict of Interest Commission*, 121 R.I. 232, 397 A.2d 884 (1979), in which we held that members of local redevelopment agencies were not subject to the Conflict of Interest Law. Carmody was subsequently appointed to the redevelopment agency. In May of 1979, after the *Little* decision and approximately two months after his appointment to the agency, the Conflict of Interest Law was amended to subject members of municipal agencies and authorities to its provisions.

The Narragansett town clerk notified the commission in a letter dated May 24, 1979, that Carmody had been appointed to the redevelopment agency, and this letter listed Carmody's home address. The commission mailed a financial-statement form to Carmody at this address on July 7, 1979. He did not complete and file the form.

On March 14, 1980, and March 18, 1981, the commission mailed financial-statement forms for the 1979 and 1980 calendar years, respectively, to Carmody's business address. On December 29, 1980, and August 19, 1981, the commission sent delinquency notices to Carmody at this same address. The delinquency notices were form letters indicating that the addressee was required to file a financial statement for the appropriate calendar year and that failure to do so might result in the assessment of civil penalties. Neither the financial statements nor the delinquency notices specifically referred to Carmody's positions on the redevelopment agency or the RIHEAA.

The commission brought a complaint against Carmody on April 22, 1982, for failure to file the financial-statement form, and a hearing was held before the commission. Carmody testified at the hearing and did not dispute having received the financial-statement forms and delinquency notices. He stated, however, that until the spring of 1982 he had assumed that the correspondence related to his membership on RIHEAA and that, because he believed RIHEAA members to be exempt from the filing requirements, he had referred the matter to the authority's counsel. In July of 1979 Carmody authorized him to respond accordingly to the commission.

At the hearing, Carmody explained that the issue concerning his duty to file as an authority member was the subject of pending litigation and that this was the reason that he

---

1. General Laws 1956 (1984 Reenactment) § 36–14–2 provides: "The following persons and entities are subject to the provisions of this chapter: (1) state or municipal elected officials, (2) state or municipal appointed officials."

Section 36–14–15 (a) provides that: "On or before the last Friday in April of each year, every person enumerated in § 36–14–2 shall file with the commission a financial statement complying with the requirements of this chapter."

had not filed the subsequent financial statements.[2] He had referred these forms and notices to the authority's attorney as well. Carmody stated that he did not know that the law had been amended to subject municipal-redevelopment-agency members to its requirements until he received the complaint from the commission.

The commission found that Carmody, as a member of the Narragansett Redevelopment Agency, was required to file 1980 and 1981 financial statements for the 1979 and 1980 calendar years. It concluded that Carmody had knowingly and wilfully failed to file the financial statements in violation of § 36–14–15 and the commission's regulations No. 1001 and 1003. Carmody was ordered to file the statements immediately and to pay a fine of $150.

Subsequently, Carmody filed this administrative appeal in the Superior Court, alleging that under G.L.1956 (1977 Reenactment) § 42–35–15(g)(2), the commission's decision and order was beyond the scope of its statutory authority. Carmody asserted that he did not knowingly and wilfully fail to file the required forms, and therefore, the commission had no authority to order compliance and assess the fine.

The trial justice thoroughly examined the record and discussed other courts' treatment of the "knowing and wilful" standard as it is used in the civil context because it is an issue of first impression in this jurisdiction. The trial justice found that "the record in this case demonstrates clearly that [Carmody] knowingly and wilfully failed to file financial statements as required by the law. Consequently, the commission, in ordering compliance and assess-

ing penalties against him was acting within the scope of its statutory authority." The trial justice affirmed the commission's decision and order.

The facts in the case of Luby are quite different. The commission found that Luby, a member of the Warwick Board of Canvassers (board), had violated §§ 36–14–4(a) and 36–14–4(e)(1) of the Conflict of Interest Law because she certified her own nomination papers as a candidate for the Warwick Republican Ward One Committee. One of the issues before us on her appeal is identical to the issue in Carmody's case, that is, whether her alleged violation of the Conflict of Interest Law was of a knowing and wilful character.

At the time of the events giving rise to Luby's appeal, Carol P. Luby was a member of the Board of Canvassers in the city of Warwick and had held that position since 1976. The board of canvassers comprises the officials who are responsible for certifying the validity of signatures on primary nomination papers.[3] The board members, however, rely on a clerical staff to do the actual checking of every signature on the nomination papers against the voter-registration list. The members of the board themselves only spot check the signatures.

In 1982 Luby became a candidate for election to the City of Warwick Republican Ward Committee for Ward One. She caused to be filed with the board of canvassers upon which she still served, primary nomination papers in support of her candidacy for election to the Republican ward committee.

2. On February 14, 1980, the authority filed suit against the commission on Carmody's behalf after receiving an advisory opinion from the commission that RIHEAA members were required to file financial statements. This court in *Rhode Island Higher Education Assistance Authority v. Rhode Island Conflict of Interest Commission,* 505 A.2d 427 (R.I.1986) found that RIHEAA members are subject to the filing requirements of the law.

3. Primary nomination papers are those documents provided for by statute that are circulated by candidates to voters within the district in which they seek election. The voters sign their names and addresses on the nomination papers which are filed with the board of canvassers. The board must then examine the signatures to determine that there are a sufficient number of valid signatures of eligible voters for each candidate to qualify for a place on the ballot. General Laws 1956 (1981 Reenactment) §§ 17–14–4,–7,–8,–11,–14 and–16.

In her capacity as a member of the board, Luby certified that the signatures contained on these papers were "names of qualified electors in the City of Warwick and qualified to vote in the Republican Primary." Luby signed one of those papers not only as a qualified elector but also as a member of the board of canvassers; in fact, she certified herself as a qualified elector.

On another of her nomination papers, Luby made affidavit that the signatures were placed on the nomination papers in her presence. She also certified, as a member of the board, that the signatures were those of qualified electors. The nomination papers containing Luby's name also contained other candidates' names for Ward One, including that of Gerald Goldstein, a candidate for the council from Ward One.

In response to a complaint about Luby's activity, the commission held a hearing. Luby testified that she followed the usual certification procedure in this case but that she certified the papers in a hurried fashion. She admitted that she had used her discretion and judgment as a member of the board in certifying the papers. She also knew about the existence of the Conflict of Interest Law.

The commission found that Luby became a candidate for political office knowing that the board of canvassers upon which she served would have to certify her papers. The commission found that she actually had made affidavit on one of her own papers and that she had certified her own papers. The commission concluded that

§§ 36–14–4(a) and 36–14–4 (e)(1)[4] require that "a member of a local canvassing authority cannot simultaneously run for, or hold, either a public office or a political party organization office if it is necessary that papers be taken out and filed with the very canvassing Board on which the member sits." The commission concluded that Luby's conduct constituted knowing and wilful violations of these sections of the law.

The commission ordered Luby to cease and desist from continued violation of the law and to pay a fine of $500. The commission stated that if, as evidence of good faith and compliance, she immediately resigned either her position with the board of canvassers or her political party organization office, the $500 fine would be waived. In the opinion of the board, Luby's June 30, 1983 resignation from the Republican ward committee was not immediate under the terms of its April 7, 1983 order. Therefore, the commission did not waive the fine.

Luby appealed from the commission's decision and order to the Superior Court where certain additional facts were stipulated to by the parties. The parties agreed that the commission had forwarded a compliance proposal to all local boards of canvassers in the state. The proposal informed the boards that in two recent decisions the commission had decided that the submission and certification of one's own nomination papers for political party organization office to a board upon which one is a member violates the Conflict of Interest

---

4. Section 36–14–4(a) provides:

"No elected or appointed state or municipal official shall, while serving as such, have any interest, financial or otherwise, direct or indirect, or engage in any business, employment transaction or professional activity, or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his duties or employment in the public interest and of his responsibilities as prescribed in the laws of this state, as defined in § 36–14–6."

Section § 36–14–4(e) provides:

"No person enumerated in § 36–14–2 or any business associate of such person unless oth-

erwise provided by law: (1) Shall represent himself or any other person or act as an expert witness before any state or municipal agency of which said person is a member or is employed, elected or engaged except in the performance of his official duties; (2) Shall after severing his official position represent himself or any other person or act as an expert witness before the state or municipal agency of which said person was a member or was employed, elected or engaged for one (1) year after he has officially severed his position; Provided, however, That this prohibition shall not pertain to a matter of public record in a court of law."

Law. The commission sought to bring all canvassers into compliance with the Conflict of Interest Law. It therefore offered not to adjudicate finally any complaint against canvassers for such activity if the canvassers voluntarily resigned the political party office. On May 27, 1983, a complaint was filed on behalf of the City of Warwick Board of Canvassers, of which the plaintiff was a member at the time, by its Chairman, Francis Foye. *City of Warwick Board of Canvassers v. State of Rhode Island Conflict of Interest Commission*, C.A. No. 83–2255. This complaint sought a declaratory judgment concerning whether §§ 36–14–4(a) or 36–14–4(e)(1) are violated when declarations of candidacy or nomination papers for political party office are submitted to a board of canvassers upon which the candidate sits.

After the submission of memoranda and a review of the law, the trial justice, in a detailed written decision, affirmed the commission in all respects. After disposing of other issues that we shall examine in due course, the trial justice cited the Superior Court *Carmody* decision and applied the same standard for knowing and wilful conduct. We granted Luby's petition for a writ of certiorari so that the matter could be reviewed by this court.

The scope of this court's review of administrative-agency decisions is limited by the Administrative Procedures Act, § 42–35–15(g). The court must not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of the evidence concerning questions of fact. *Edge-January, Inc. v. Pastore*, 430 A.2d 1063 (1981); *Guarino v. Department*

*of Social Welfare*, 122 R.I. 583, 410 A.2d 425 (R.I.1980). However, "[q]uestions of law * * * are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." *Narragansett Wire Co. v. Norberg*, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977).

The trial justice who heard the Carmody appeal stated that "[i]t is true that RIGL §§ 36–14–12 and 36–14–13, taken together, provide that in order to require compliance and assess civil penalties, there has to have been a 'knowing and wilful' violation of the *Conflict of Interest Law*. The statute, however, does not define 'knowing and wilful.' "[5] After examining the definitions that other courts have employed, the trial justice stated that "knowing and wilful" violations of civil statutes occur "when the actor consciously decides to perform an act or refrain from acting which act or non-act results in a violation of the law. It is not necessary that the actor have a conscious intent to break the law." Both Carmody and Luby contended in the Superior Court that their alleged violations of the Conflict of Interest Law were not knowing and wilful and that therefore the commission had exceeded its statutory authority in ordering compliance and assessing fines against them. They present the same argument in this court as well. In addition, they argue that the definition used by the trial justices imposes a standard of strict liability on public officials who may unwittingly violate the law. This, petitioners assert, contradicts the legislative intent to punish only knowing and wilful violations. The petitioners contend that legislative intent would be better served by this court's

---

**5.** Section 36–14–12(4) provides in pertinent part that "At the conclusion of proceedings concerning such an alleged violation, the commission shall immediately begin deliberations on the evidence and then proceed to determine whether there has been a knowing and wilful violation of this chapter."

Section 36–14–13 (a) provides that "(a) The commission, upon a finding pursuant to this chapter that there has been such a violation of this chapter, shall issue an order that may require such violator to:

(1) Cease and desist such violation of the provisions of this chapter; and/or
(2) File any report, statement, or other information as required by this chapter and/or
(3) Pay a civil penalty of not more than ten thousand dollars ($10,000) for each such violation of this chapter; and/or
(4) Refer the entire record of its proceedings to the attorney-general."

adoption of a higher standard of "knowing and wilful" conduct, such as one that would require them to have known about the requirements of the law and then to have disregarded the law. We decline to adopt such a construction.

The standard concerning "knowing and wilful" violations of the law in the civil context has not yet been defined by this court. We generally explored the standard as it applies in criminal cases in *State v. Contreras*, 105 R.I. 523, 253 A.2d 612 (1969). In that case, we emphasized that the words do not have a "single, fixed or uniform meaning. * * * Their meanings, moreover, will often vary depending on the context in which used or the offense charged. * * * Very generally, and without intending either to delve into their precise meanings or to explore the nuances which may differentiate one from the other, it may be said that to act either 'knowingly' or 'wilfully' is to act voluntarily and intentionally, and not because of mistake or accident or other innocent reason. * * * And while the word 'wilfully' usually will not imply an evil purpose if used in connection with offenses not in themselves wrong or involving moral turpitude, it will be otherwise if the offense involves such turpitude for then it will customarily connote that it has been done with a specific intent to do something which the law forbids, that is to say, with a bad purpose and with the intent either to disobey or to disregard the law." *Id.* at 537, 253 A.2d at 620.

Under *Contreras* there need not be a specific intent to violate the law. Rather, the requirement that an act be "knowingly and wilfully" committed refers only to the concept that there be "specific intent" to perform the act itself, that is, that the act or omission constituting a violation of law must have been deliberate, as contrasted with an act that is the result of mistake, inadvertence, or accident. This definition makes clear that, even in the criminal context, acts not involving moral turpitude or acts that are not inherently wrong need not be motivated by a wrongful or evil purpose

in order to satisfy the "knowing and wilful" requirement. *See also United States v. Illinois Central Railroad Co.*, 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773 (1938); *United States v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933). This proposition meets with nearly universal approval, but beyond it, the degrees of knowledge and culpability required to satisfy the standard lie along a fairly broad continuum of judicial interpretation, perhaps because of the necessarily contextual nature of the words. *Id.* The words, either used separately or together, have received considerable attention in a number of decisions construing both civil and criminal enforcement provisions in a variety of regulatory statutes. *See, eg., United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971) (proof that defendant knowingly violated statute requiring completion of forms pertaining to shipping dangerous chemicals requires only knowledge that papers were not completed, not knowledge that omission was illegal); *United States v. Currier*, 621 F.2d 7 (1st Cir.1980) (criminal conviction for selling firearms to out-of-state resident and failure to maintain proper records: held, no specific intent required, must show knowing failure to file, not knowing violation of law); *United States v. Warren*, 612 F.2d 887 (5th Cir.1980) (currency-reporting statute criminally punishing knowing and wilful transportation of more than $5,000 beyond a United States border without filing necessary report: held, in order to convict, words require actual knowledge of statute and voluntary and intentional disregard of known legal duty); *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.1972) (violation of Fair Labor Standards Act (FLSA) wilful when there is substantial evidence to support finding that employees knew or suspected that actions might violate the FLSA); *United States v. Couming*, 445 F.2d 555 (1st Cir.1971) (defendant convicted of criminal violation of draft-registration law by failure to have certificate of registration in personal possession after found

to have had knowledge of law and then to have deliberately refrained from complying); *Equal Employment Opportunity Commission v. State of Rhode Island,* 549 F.Supp. 60 (D.R.I.1982) (violation of Equal Pay Act—*Jiffy June Farms, Inc.* standard adopted).

We believe that a more thorough exposition of two decisions in particular is helpful to our discussion of this matter. In *Jiffy June Farms, Inc.,* the defendant-employer was alleged to have violated the Fair Labor Standards Act. The employer, after receiving the advice and approval of its attorney, decided to change the rate of pay for overtime work. This change in the overtime-pay rate was in violation of the act, and the court found that the violation was "wilful" because sufficient evidence existed in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. The court said that "[s]tated more simply, we think the test should be: Did the employer know the FLSA was in the picture?" 458 F. 2d at 1142. *See also Equal Employment Opportunity Commission v. State of Rhode Island,* 549 F.Supp. 60 (D.R.I.1982) (adopting this test under the Equal Pay Act). The court in *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429 (D.C.Cir.1976), expanded upon this characterization of the standard, stating that

> "we reject * * * a definition of 'wilful' in the suit-limitation provision [of the FLSA] which would demand proof that the employer entertained a bad purpose or an evil intent. At the same time we need not go so far as to hold that a violation is willful merely because from the employer's viewpoint the statute was in the picture. * * * We think, that at the very least the employer's noncompliance is 'willful' when he is cognizant of an appreciable possibility that he may be subject to the statutory requirements and fails to take steps reasonably calculated to resolve the doubt. We think too, that the same conclusion follows when an equally aware employer consciously and voluntarily charts a course which

turns out to be wrong." *Id.* 461–62. *See also Equal Employment Opportunity Commission v. State of Rhode Island,* 549 F.Supp. 60 (D.R.I.1982); *Nitterright v. Claytor,* 454 F.Supp. 130 (D.D.C.1978).

Recently in *Trans World Airlines, Inc. v. Thurston,* 469 U.S.111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Court addressed "wilful violation" of an age-discrimination statute in the context of the liquidated damage provision of the statute. The Court distinguished the suit-limitation provision from the liquidated damages provision, finding that the latter was intended to be punitive. The Court flatly rejected the assertion that punitive damages would be warranted simply upon a finding that the employer knew that the statute was "in the picture." The Court concluded that these damages should only be imposed when the violative conduct indicates that the employer either knew or showed reckless disregard for the question of whether the conduct was prohibited by that statute, and the court found that such damages would be inappropriate in instances in which a violation had been committed by an employer who had acted reasonably and in good faith.

■ ■ In this case, the commission urges this court to apply the ancient maxim that "ignorance of the law is no excuse," arguing that a failure to adhere to it will render the statute unenforceable. We decline to embrace that maxim fully today because it oversimplifies the difficulties that may be encountered in interpreting the statutes and regulations governing contemporary society in its manifold activities. Many of these statutes are highly complex and are sometimes ambiguous. Moreover, we believe had the Legislature intended to impose what is in essence a strict liability standard, it would not have chosen to condition the imposition of sanctions upon knowing and wilful violations of the law. This court is therefore reluctant to approve of the imposition of penal sanctions under the Conflict of Interest Law when an offi-

cial has violated the letter of the statute but has acted reasonably and in good faith. We find the *Trans World Airlines* opinion particularly persuasive because it convincingly articulates the rationale for refusing to impose penal sanctions under those circumstances. We approve of the *Laffey* court's exposition of circumstances in which violative conduct would not be reasonable. We feel constrained, however, to point out that where the mandate of the law is clear, as it is in this case, it is difficult to conceive of a violation that could be reasonable and in good faith. Accordingly, we apply the *Trans World Airlines* standard to the facts of the cases presently before us.

■ Prior to his appointment to the redevelopment agency, Carmody had already had considerable experience with the filing requirements of the law and with the commission in connection with his RIHEAA membership. Carmody knew that the law might apply to him as an agency member. Rather than seek out an opinion from the commission (a procedure that he knew existed) or a lawyer, Carmody chose to rely on the advice of the town council president. We do not consider this action to be dispositive, however, because the advice was factually correct; Carmody, at the time of the appointment, was not subject to the law. The law was not amended until two months after the appointment. His failure to resolve the doubts occasioned by the subsequent and repeated mailing of forms and delinquency notices is what constituted legally inexcusable conduct. Although it generally would be helpful for the commission to indicate in its correspondence to officials the particular agency membership creating the duty to file (particularly when the person is a member of two or more agencies), we do not believe that its failure to do so in this case removed the onus on Carmody to inquire further. Carmody, knowing about the law and its possible application to him, resulting from the repeated mailing of forms and delinquency notices, consciously chose not to file the

forms or explore his position further. We believe that this is no different from the situation described in *Laffey* because "he [was] cognizant of an appreciable possibility that he [might] be subject to the statutory requirements and [he] failed to take steps reasonably calculated to resolve the doubt." *Laffey*, 567 F.2d at 462. At the time of the filing of this petition, Carmody still had not filed the financial-statement forms. As the trial justice correctly observed:

"A statute that requires the filing of statements cannot be construed in such a way as to become unenforceable simply because the person required to make such filing claims lack of knowledge of its requirements. Here in making the decision not to file without getting proper advice, plaintiff took his chances that he might later be determined to be in violation of the Law. Therefore, the record in this case demonstrates clearly that plaintiff knowingly and wilfully failed to file financial statements as required by the Law."

Before reaching the issue of whether Luby knowingly and wilfully violated the law, we must address several other issues that she has presented in her petition. Luby asserts that the charges in the probable-cause finding and in the decision were more comprehensive than the charges contained in the complaint. This, she argues, deprived her of adequate notice with which to prepare her defense. She contends that she did not violate § 36–14–4(a) and that her activities did not constitute "representing" herself before the board within the meaning of § 36–14–4(e)(1). She also argues that the $500 fine imposed on her should be waived in light of her June 30, 1983 resignation from her political-party-organization office.

■ We find Luby's contention that she was not accorded adequate notice to be without merit. The commission mailed a copy of "Finding of Probable Cause and Notice of Hearing" to Luby. It alleged that she had violated §§ 36–14–4(a) and 36–14–

4(e)(1). The trial justice correctly analogized the finding of probable cause to a complaint under the Rules of Civil Procedure. The complaint to the commission precedes the finding of probable cause and must only allege *facts* "sufficient to constitute a knowing and wilful violation of *any* of the provisions" of the Conflict of Interest Law. Section 36–14–10. This complaint may be filed by any aggrieved individual, and it then becomes the obligation of the commission to determine whether the facts alleged, if true, constitute a violation of the law. In determining the facial sufficiency of the complaint, the commission is not limited to pursuing only the statutory violation specifically alleged in the complaint. The commission must examine the *facts* and evaluate their potential legal significance. As long as any additional violation cited by the commission arises out of the same operative facts as those described in the complaint, the addition of that charge to the subsequent finding of probable cause and decision is proper. The finding of probable cause is then mailed to the alleged violator and serves as a basis for a hearing. Because § 36–14–11 speaks of the power of the commission to amend a complaint in permissive terms, we conclude that there is no mandate that the commission do so. We find that Luby was afforded adequate notice of the charges against her and was accorded due process.

■ Luby contends that because she did not physically appear before the board and represent herself viva voce, she did not violate § 36–14–4(e)(1). We believe that this is a contorted reading of the statute. Luby could not have represented herself before the board more effectively and completely than when she submitted her own nomination papers and then certified them. In so doing, she exercised the power of the board on her own behalf. This was not unlike a judicial officer's submitting a petition to the court and then personally granting it. However formal or pro forma the matter may seem, such an action would be improper and would in the fullest sense constitute self-representation. Because we find that Luby did violate § 36–14–4(e)(1) and because she has resigned her position on the Republican ward committee, we need not reach the issue of the alleged incompatibility of that position with her position as a member of the board of canvassers.

■ Having determined that Luby did violate the Conflict of Interest Law, we turn now to the issue of whether her violation was knowing and wilful. Luby testified that she knew of the existence of the law, and she conceded that her position with the board involved discretion and judgment. Luby has never alleged in any forum that she did not know that she was certifying her own papers or that she mistakenly acted upon them, believing them to be the nomination papers of another candidate. Rather, she contends that when she signed these papers, she knew that they were hers but, she argues, she had no subjective knowledge that it would be wrong for her to do so, and therefore she had no wilful intent to violate the statute. We are convinced that even if Luby did not intend to violate the law, a reasonable person in these circumstances certainly would have realized that it would be improper to certify one's own nomination papers. Luby's conflict of interest was so obvious in this case that it is difficult to elaborate upon it. Consequently, we must conclude that her violation was knowing and wilful.

As far as Luby's objection to the refusal of the commission to waive her $500 fine is concerned, we believe that the commission's position that her compliance was not "immediate" enough is somewhat rigid since she resigned within an acceptable period and did seek review of the commission's action in the Superior Court. In the absence of a specific deadline set by the commission, we decline to uphold the fine. The other issues raised by the petitioners are without merit.

For these reasons, the petitions for certiorari are denied in part and granted in part, the writs heretofore issued are quashed save as to the fine against Luby,

and the papers of this case are remanded to the Superior Court with our decision endorsed thereon.

KELLEHER, concurring.

I have no quarrel with the adoption of the *Trans World Airlines* standard. However, in fairness to Mr. Carmody, the record appears to indicate that the commission never rejected his claim that he actually believed the second set of reporting forms concerned his status as a state rather than a municipal official. Since thousands of Rhode Islanders, because of the conflict-of-interest legislation, are now regarded as either state or municipal officers who may be subject to an imposition of a civil penalty of a fine of up to $10,000, I trust that some effort will be made to clarify the provisions of § 36–14–4(g), which appear to bar a state official from doing business with municipal agencies and a municipal official from doing business with a state agency. Because most of these officials receive minimum or no compensation for performing vital public services, every effort must be made to clarify this legislation so that all who come within its reach will know exactly where they stand.