DECISION
Before this Court is an appeal brought by the appellants, James Dobson, Debra Dobson, and Wickford Service, Inc. ("Appellants") from a Final Decision of the Department of Environmental Management ("DEM" or "Division") imposing eighteen thousand dollars ($18,000.00) in fines against the appellants for failure to comply with certain DEM regulations. This Court possesses jurisdiction pursuant to G.L. § 42-35-15.
Facts/Travel
Appellants James and Debra Dobson own and operate Wickford Service, Inc. a retail service gasoline station located in North Kingstown, Rhode Island. On the site of Wickford Service are at least four underground storage tanks ("USTs") which are used to store waste oil and gasoline. In 1993, DEM issued a Notice of Violation and Order ("NOV") against the appellants for alleged violations of precision testing and reporting requirements for the underground storage tanks. Specifically, the NOV alleged that the appellants had failed to precision test their USTs, had failed to submit results pursuant to the tests, failed to install a spill containment basin, and failed to submit written verification of the installment of the spill containment basin. Transcript of July 10, 1995 Hearing, p. 4.
The NOV assessed a penalty against the appellants in the amount of $30,100.00. The appellants sought a hearing on the matter and after hearing on July 10, 1995, the hearing officer reversed and sustained certain portions of the previous order and imposed an adjusted penalty of $18,000.00 against the appellants. Said decision was confirmed by the Director and the appellants now seek the present appeal therefrom.
In their appeal, the defendants assert three arguments. First the appellants challenge the consideration of alleged violations which occurred in 1987 and 1991.[1] Further, the appellants assert that DEM failed to meet its burden in establishing the imposed penalties, and lastly the appellants contend that the violations were improperly classified as Type II Moderate violations warranting a $1000.00 fine.
Standard of Review
The review of a decision of the Department of Environmental Management by this Court is controlled by R.I.G.L. § 42-35-15(g) which provides for review of a contested agency decision:
 "(g) The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The Court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, or
 (6) Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of an agency in regard to the credibility of witnesses or the weight of the evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court "must uphold the agency's conclusions when they are supported by any legally competent evidence in the record." Rocha v. State PublicUtilities Comm., 694 A.2d 722, 725 (R.I. 1997)(citing RhodeIsland Public Telecommunications Authority v. Rhode Island LaborRelations Board, 650 A.2d 479, 485 (R.I. 1994)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently from the agency. Berberian v. Dept. of EmploymentSecurity. 414 A.2d 480, 482 (R.I. 1980). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458.
Pre-Hearing Stipulation
The appellants first take issue with the inclusion and consideration of alleged violations in the years 1987 and 1991 for tanks # 003, 004, 005 arguing that the pre-hearing stipulation limited consideration to the years 1988 and 1989, and further that the issues outlined in the pre-hearing record eliminated tank 005 from consideration with regard to the penalties. See Pre-hearing Conference Record AAD. No. 93-052/GWE, p. 4; footnote 1 supra. The appellants aver that the hearing officer should have followed the pre-hearing guidelines in limiting the violations to the years agreed upon.
DEM contends that the scope of the alleged violations, inclusive of the years 1987 and 1991 was proper. Specifically, DEM avers that in the pre-hearing conference the appellants had admitted to violations during those years but DEM was free to prove that the remaining violations had occurred.
An examination of the pre-hearing conference record reveals that the parties had agreed to stipulations of fact and an outline of issues. Stipulation #5 stated the USTs (as they were listed in an accompanying chart) "were not precision tested during the following years: UST (1): 1987, 1988, 1989, 1990, 1991, 1992, UST (3): 1988, 1989; UST (4): 1988, 1989, UST (5): 1988, 1989." Pre-hearing Conference Record at 3. The pre-hearing record also shows that the parties had stipulated to the appellants' failure to test the tanks in question in 1988 and 1989. Transcript of July 10, 1995 Hearing, pp. 9-10, Pre-hearing Conference Record at 3, Decision and Order, pp. 7-8. However, with regard to the remaining years in question, 1987 and 1991, the hearing officer accepted testimony regarding those violations on all three tanks.
A stipulation is defined as ". . . [v]oluntary agreement between opposing counsel concerning disposition of some relevant point so as to obviate need for proof or to narrow range of litigable issues . . . An agreement, admission or confession made in a judicial proceeding by the parties thereto or their attorneys . . . Such are evidentiary devices use to simplify and expedite trials by dispensing with the need to prove formally uncontested factual issues . . . ." Black's Law Dictionary 6th Edition. p. 1415 [Citations omitted].
After a review of the record and in light of the above definition, this Court finds that the stipulation as to Issue #5 reflects an agreement based on an admission of the appellant that the USTs were not precision tested during the indicated years. DEM was thus left to its burden of proof on the remaining alleged violations.[2] There is no indication that the stipulation prohibited DEM from introducing evidence of violations in other years and likewise attempting to sustain its burden of proof.
The pre-hearing conference record also reveals that there were several issues to be considered at the hearing inclusive of whether the appellants had failed to precision test, failed to report the results, failed to install a spill containment basin, and failed to report the installation. Pre-hearing Conference Record at 4. These issues to be discussed at the hearing reflect a broad consideration of the alleged violations without limitation as to the years. Notwithstanding a supposed year and tank limitation in Issue #5, Issues #1-4 and #6 provide coverage for all the years and all the tanks in question. Moreover, in light of the specific stipulations entered into by the partes, it would be pointless to subsequently disregard the admissions by excluding them in any scope of inquiry.
Accordingly, the Court finds that the consideration of the alleged violations with regard to tanks 003, 004 and 005 including the years 1987 and 1991 was proper.
Classification as Type II Moderate Penalty and Burden of Proofin Assessing Penalties
The appellants argue that the imposition of proposed penalties is not in accordance with G.L. § 46-12, 42-17.1, 42-17.6, and 23-19.1 and the Rules and Regulations for Assessment of Administrative Penalties as set forth by DEM.[3]
Specifically, the appellants aver that the classification of the violations as Moderate Type II violations is not reflective of the factors and policies set forth in Sections 2, 3, and 10 of the DEM Rules and Regulations for the Assessment of Administrative Penalties.[4]
The appellants also argue that the decision of the hearing officer should be reversed because DEM failed to meet its burden in establishing the penalties imposed pursuant to Rule 12(c) of the Rules and Regulations for the Assessment of Administrative Penalties. In particular, the appellants claim that because the hearing officer observed in her decision that there was insufficient evidence regarding the penalties imposed for certain violations, the subsequent $18,000.00 fine should not have been imposed.[5] The appellants contend that in light of the Fickett
case cited in the hearing officer's decision, the imposition of the $18,000.00 fine was arbitrary and capricious, clearly erroneous and characterized by an abuse of discretion because it was not proven by DEM, but instead determined by the hearing officer.
DEM avers that the administrative penalties were calculated in accordance with the Division's Penalty Regulations with regard to the type of violation and were determined pursuant to the factors as set forth by statute. DEM also maintains that the decision of the hearing officer is clearly supported by sufficient evidence to meet the Division's burden of proving the penalties. DEM notes that the testimony presented by Ms. Cabecieras from DEM regarding the imposition of the penalties was uncontradicted and the appellants did not present any evidence offering an alternative calculation.
DEM also argues that the appellants failed to raise the issue at the administrative level that the penalty amount and calculation were not proven. Specifically, DEM claims that the appellants did not address the insufficiency of the calculations at the hearing stage in a motion for directed verdict or in a post-hearing memorandum. Due to the appellants' failure to raise the issue, DEM claims that the issue cannot now be considered on appeal.
A review of the transcript as well as the hearing officer's decision reveals that the appellants had contested the imposition and calculation of the fines at the hearing level prior to the issuance of DEM's decision and in their post-hearing memorandum.See, Decision and Order pp. 24, 25. The appellants' allegations that the amount was improperly calculated and not supported by the evidence are specifically addressed in the hearing officer's decision. Id. at 23, 24, 25, 28-29. As a result, this Court finds these matters were raised at the hearing level and can be heard on appeal. DEM's contention that these issues were not addressed at the hearing level is therefore without merit.
The assessment of penalties for DEM violations is governed by the Rules and Regulations for Assessment of Administrative Penalties, Sections 10 and 12. Pursuant to these rules and regulations DEM must first classify the type of violation according to the nature of the legal requirement allegedly violated. Violation types consist of three categories. Rules and Regs. for the Assess. of Admin. Penalties, Section 10(a). Type 1 violations are those that are "directly related to the protection of the public health welfare or environment." Type 2 violations are classified as "important by indirectly related to the protection of the public health, safety, welfare or environment." Type 3 violations are considered "important but incidental to the protection of public health, safety, welfare or the environment." Each type category contains a listing of several factors used to determining the classification. Id. at § § 10(a)(1)(A), (B), (C).
DEM then assesses the deviation from the standard according to the degree to which the violation is out of compliance. Id. at § 10 (a)(2). Deviations from the standard are classified as minor, moderate or major are based on a list of factors delineated in Section 2. DEM then calculates the economic benefit of noncompliance, if any, which purports to offset the benefits of noncompliance. In determining the amount of the penalty DEM can also consider the penalty amount pursuant to G.L. § 42-17.6-6
which lists 12 factors the Director shall include in his/her consideration.
At the hearing, DEM "must prove the alleged violation by a preponderance of the evidence." Rules and Regs. for the Assess. of Admin. Penalties, Section 12(c). "Once a violation is established, the violator bears the burden of proving by a preponderance of the evidence that the Director failed to assess the penalty and/or the economic benefit portion of the penalty in accordance with these regulations." Id.
The Decision and Order in this matter reveals that the hearing officer considered the testimony presented at the hearing as well as post-hearing memoranda of both parties in arriving at her final decision. See, Decision and Order, pp. 24-25. In contrast to the alleged spill containment violations for which no evidence as to the assigned penalty amount was presented and no penalties were imposed, at the hearing Ms. Cabecerias presented evidence of the precision testing penalty amount of $1000.00. Transcript of July 10, 1995 Hearing, pp. 13-14.
As mentioned in her decision, the memorandum from the Division was replete with analysis in support of its classification of the violation as Type II Moderate. Id. at 24-28. Namely, DEM classified the violation as Type II because the failure to test the tanks indirectly increased the potential that a leak would not be detected and because the failure to comply with the procedure eliminated the first line of defense against a leaking UST. In addressing the appellants' assertion that the violations should be classified as Type III because they pertain to routine reporting requirements, the hearing officer noted that the violations were not limited to reporting results of conducted tests but failure to conduct the mandatory testing, and such did not constitute an "incidental requirement." Id. at 24.
The hearing officer's decision was supported by further evidence that the deviation should be classified as moderate and not minor. Specifically, evidence was presented that the situation was not such that the appellants had attempted to comply, but admitted they were entirely out of compliance by failing to precision test on several tanks for a number of years.Id. at 27. The hearing officer's decision to classify the violation as moderate reflects the stipulated six year duration of the violations on the waste oil tank and the four years of violations proven by DEM on the USTs.
The hearing officer's decision also reflects those factors set forth G.L. § 42-17.6-6 in consideration of an administrative penalty. Namely, the hearing officer noted Mr. Dobson's assertions that his failure to test was due to his financial limitations, that the tanks had been "stick tested" on a daily basis, and that there was no actual environmental damage to the environment.[6] Decision and Order, p. 23, 25.
Applying the foregoing evidence to the Water Pollution Control penalty matrix as set forth in the Rules and Regulations, the hearing officer imposed the minimum penalty of $1000.00 for each Type II Moderate violation, for a total of $18,000.00
In light of the evidence and memoranda considered by the hearing officer, this Court finds that the hearing officer's imposition of the minimum penalty of $1000.00 for each Type II Moderate violation for failure to precision test the USTs was supported by the evidence and is reflective of the guidelines set forth in the General Laws. This Court further finds that the decision neither constituted an abuse of discretion nor was arbitrary or capricious such that substantial rights of the appellants have been prejudiced.
Accordingly, the decision of the hearing officer is affirmed. Counsel shall prepare the appropriate order for entry.
[1] The parties agreed at a Pre-Hearing Conference on August 3, 1994 to the following stipulation which indicates the years of violation for lack of precision testing and failure to submit such test results:
Tank 001 (waste oil): 1987, 1988, 1989, 1990, 1991, 1992;
Tank 003 (gasoline): 1988, 1989,
Tank 004 (gasoline): 1988, 1989
Tank 005 (gasoline): 1988, 1989.
[2] After hearing the Division's testimony as well as testimony from the appellant, the hearing officer noted that the appellant's testimony regarding testing during those years was sketchy and unsubstantiated. See Decision and Order, pp. 7-8. As a result, the found that DEM had met its burden on the remaining violations and sustained the imposition of fines. Id.
[3] Section 46-12 et seq. relates to Water Pollution, Section 42-17.1 et seq. governs the Department of Environmental Management; Section 14-17.6 et seq. pertains to Administrative Penalties for Environmental Violations and Section 23-19.1 refers to the Hazardous Waste Management Act.
[4] Sections 2 and 3 of the Rules and Regulations for Assessment of Administrative Penalties concern the purpose, goals and general policies of DEM regulations to assure consistent enforcement, the protection of the public health and safety, lawful and fair assessment of administrative penalties and clarify the Department's authority.
[5] Particularly, the hearing officer found that DEM failed to present any evidence regarding the calculation of a penalty on the alleged spill contaimnent violations. The hearing officer also concluded that although failure to install a spill containment basin was classified as a Type II/Moderate violation by Ms. Cabecieras, there was no evidence presented as to the dollar amount. Decision and Order, p. 22.
The report of the hearing officer also indicates that DEM failed to meet its burden in proving that precision testing violations occurred in 1990, particularly in light of the reports that were subsequently submitted to DEM. The hearing officer noted that "no evidence was introduced or elicited regarding the penalty amount and its calculation for failure to timely submit verification of compliance." Decision and Order, p. 9. The hearing officer concluded that there was no evidence offered regarding a specific dollar amount for any alleged economic advantage or violation of the reporting requirements for precision testing and thus she did not impose any penalties for these violations.
Ultimately, the hearing officer found that DEM had proven that the appellants failed to test tank #001 for six years (1987, 1988, 1989, 1990, 1991, 1992), tank #003 for four years (1987, 1988, 1989, 1991), tank #004 for four years (1987, 1988, 1989, 1991), and tank #005 for four years (1987, 1988, 1989, 1991).Decision and Order, p. 21.
[6] The hearing officer further noted that although Mr. Dobson testified as to his financial constraints, no evidence was presented to support his assertion that he could not afford to conduct the mandatory testing. Pursuant to Costa v. Registry ofMotor Vehicles, this Court is unable to substitute its judgment as to the credibility of the witness. 543 A.2d 1307, 1309 (R.I. 1988).