DECISION
This is an appeal from a decision of the State Department of Human Services Appeals Office (DHS). Plaintiff seeks reversal of the Department's denial of her claim for long term care medical assistance to pay for nursing home care for the months of December, 1998, January, 1999, February, 1999 and March, 1999. Jurisdiction in this Court is pursuant to G.L. 1956 § 45-35-15.
 Facts/Travel
Plaintiff, Estelle Parrillo, resided at Brentwood Nursing Home from March, 1998 through April, 1999. Brentwood Nursing Home charged Plaintiff $3,875 a month for residential care. At all times material hereto, her niece, Lee McMullen acted as her attorney in fact and represented Plaintiff in all of her dealings with DHS. Unfortunately, purely because McMullen failed to comply with DHS regulations and then failed to follow clear instructions provided to her by DHS, Plaintiff lost potential benefits and received no assistance for nursing home care for the months of December, 1998, January, 1999, February, 1999 and March, 1999 in spite of the fact that she was without sufficient resources to pay those charges herself.
To put this matter in perspective, it is necessary to examine the travel of Plaintiff's application for benefits. In November, 1998, McMullen spoke to a DHS employee, Michael Gorman to inquire about her aunt's entitlement to medical assistance. At that time, Plaintiff's bank balances totaled approximately $12,000. McMullen had not yet paid Plaintiff's nursing home fees for November. Gorman told McMullen that Plaintiff would be entitled to assistance when her assets dropped to $4,000. He also told her that she could contract for Plaintiff's funeral to reduce her bank balances and help her establish eligibility for benefits. (DHS-121, March 30, 1999.)
According to McMullen, Gorman also told her that her aunt would be entitled to receive assistance retroactive for three months. (Tr. at 10.) McMullen was engaged in retailing and involved in a busy work season. She understood Gorman's statements to mean that she could refrain from addressing the issue until February and then apply and receive benefits for her aunt retroactive to November. (Tr. at 10.)
McMullen would have served her aunt better by paying Plaintiff's November nursing home bill and contracting for her funeral before the end of November. If she had made those payments, and they had reduced Plaintiff's bank balances below $4,000, Plaintiff could have then applied for assistance. DHS would have approved the application and provided Plaintiff with retroactive benefits. Plaintiff would have been entitled to recover for allowable expenses that had been incurred no earlier than three months prior to the date the application was approved so long as Plaintiff met the eligibility requirements during the retroactive period. (DHS Regs. 034.05, 354.40, 310.05)
However, McMullen did nothing to reduce her aunt's bank balances. She did not contract for Plaintiff's funeral. Instead, she merely stopped paying nursing home charges. McMullen did not pay Plaintiff's monthly nursing home fees for November, December, January or February.
Apparently, McMullen believed DHS would consider the outstanding nursing home fees when determining Plaintiff's eligibility for assistance. By February, the fees exceeded her bank balances.
However, DHS does not consider outstanding unpaid bills in determining eligibility, and when McMullen applied for assistance in February, the mere fact that Plaintiff's bank balances exceeded $4,000 was sufficient grounds to deny her assistance, which they did. McMullen received DHS's denial letter dated February 19, 1999.
DHS advised McMullen:
 "Your aunt's resources exceed medical assistance limits at this time. So her case was denied. If her assets have changed since this application was submitted, please send me the current verification of her assets and where the money was spent. If it was spent . . . I will have your aunt's case until 3/19/99. If her situation changes after that, a new referral will be needed." (Tr. at 4.)
Along with the denial, McMullen received the appropriate notice advising Plaintiff of her appeal rights and providing her with a form so that she could commence an administrative appeal from the decision. (Tr. at 2); See also, DHS-121. The notice additionally stated:
 "Your application for RI Medical Assistance has been denied for the month of February, 1999 because: . . . ESTELLE PARRILLO's resources in the amount of $12,952.15 is more than the SSI related standard resource limit of $4,000.00 (R.I. DHS Manual, section 0354.05). You are $8,952.15 in excess of the standard. You may be able to establish eligibility for Medical Assistance on the basis of resources if:
 1. You have outstanding allowable medical bills or other allowable expenses that equal or exceed the amount of your excess resources; and
 2. you reduce the amount of the excess resources to the appropriate resources limit by actually paying the allowable expenses or fees; and
 3. you submit verification thereof within thirty (30) days of the date of this notice. Both the expenditure of the resources and submission of the verification of the expenditure and the reduced resources must occur within thirty (30) day time period." (DHS Denial Letter, February 19, 1999.)
McMullen did not take an appeal from that denial letter nor did she take the necessary steps set forth on the notice to establish eligibility for February, 1999. She could have reduced Plaintiff's bank balances by paying allowable expenses that were outstanding as of February, 1999. She had not yet paid nursing home charges for November, December, January or February. All of those expenses were incurred prior to the date of her February application.
Again misguided, McMullen chose instead to contract for her aunt's funeral and to pay the nursing home bill for November, 1998. Those combined expenditures reduced her aunt's bank balances to $4,000. (Tr. at 4.) Satisfied that she had met DHS requirements, McMullen submitted verification of those payments to DHS on March 19, 1999, within thirty days of the date of the denial letter.
Unfortunately, the funeral bill was not an outstanding expense as of February, 1999. She contracted for the funeral on March 11, 1999. It was too late to contract for Plaintiff's funeral to establish eligibility for February, 1999 or earlier.
DHS replied to the second submission on March 22, 1999:
 "Dear Ms. McMullen: I received the packet of information on your aunt Estelle Parrillo on 3/19/99. I have reviewed the information today and have come to the conclusions there is no eligibility for 2/99 or before that date because her assets exceeded our limit. There is no eligibility for 3/99 based on excess assets and because a burial contract opened in 3/99. We cannot consider that month for assistance as the State considers this to be a transfer. She may be eligible for 4/99 on financially. If you want us to consider 4/99 on, please send in a computer printout of balances as of 4/1 before 4/8/99 or a new referral will be needed. D. Azzarone." (DHS Letter, March 22, 1999.)
Using the form she received with the February 19, 1999 denial letter, Plaintiff took an appeal from the letter of March 22, 1999 within thirty days of receiving it. The hearing officer concluded that Plaintiff's appeal was from the March 22, 1999 letter and was timely. (Tr. at 6.)
Plaintiff's appeal was heard before a single Appeals Officer on June 11, 1999. McMullen testified on behalf of Plaintiff. Donna Azzarone, a social caseworker and Joyce Patterson, a caseworker supervisor for the Department of Human Services appeared on behalf of the defendant. (Tr. at 1, 2.) Most of the evidence was undisputed. Plaintiff does not challenge the DHS finding that her bank balances exceeded $4,000 until mid March when McMullen paid the November nursing home bill and contracted for Plaintiff's funeral. Defendant does not dispute that Plaintiff is indebted to Brentwood Nursing Home for back charges.
McMullen attempted to excuse her delay in reducing her aunt's assets by blaming DHS representative, Michael Gorman, for misleading her or failing to adequately explain department regulations to her. She claimed that Gorman told her to apply for assistance even though she had informed him that the bank balances approximated $12,000 (Tr. at 12.) She testified:
 "And in November, and, you know, if he had said to me, reduce the twelve thousand dollars immediately, you know, he knew I had, hadn't done the burial fund or anything like that. He didn't say this. He said you have, you can go, that they could go back three months, you know, and I explained to him I was in retailing and my next couple of months were going to be busy. And he said, you know, he didn't seem to have any concern about it. He said, you know, get to it as quickly as you can and, um, submit what what's available, which I did do. And what's happening now, is that the social security check goes in each month and it keeps building up the balance." (Tr. at 10.)
 "Well, I still don't understand why when she was at 12,000, someone didn't say to me, pay down all expenses." (Tr. at 13.)
 "And if they had told me that, I certainly would have done it." (Tr. at 14.)
In a written decision issued on October 26, 1999, the Appeals Office denied Plaintiff's appeal. The Officer made the following findings of fact:
 1. The appellant's representative applied for Long Term Medical Assistance in February, 1999.
 2. The original application was denied on February 19, 1999 due to excess resources.
 3. The agency received additional information to support a resource reduction in March 1999.
 4. The appellant had purchased a burial contract on March 11, 1999.
 5. On March 22, 1999, the agency notified the appellant of her ineligibility due to excess resources.
 6. The appellant filed a timely appeal of the Notice.
 7. Subsequent to the hearing the appellant was found eligible beginning April 1999.
 CONCLUSION: The agency determination of eligibility is correct. The appellant is eligible for LTC related Medical Assistance beginning April 1999. As of March 1, 1999, the appellant had excess resources. The appellant was promptly notified February 19, 1999 that she had excess resources. The testimony and evidence received at hearing support the agency position that those assets were not satisfactorily reduced until April 1, 1999. Policy clearly states that eligibility cannot be achieved by resource reduction in a retroactive period. (Administrative Hearing Decision, October 26, 1999.)
 It is from this decision that Plaintiff takes her appeal.
 Standard of Review
The review of a decision of the Department of Human Services by this court is controlled by R.I.G.L. § 42-35-15(g), which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1998); Carmody v. R.I. Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's finding. Newport Shipyard v. Rhode Island Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting, Caswell v. George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berbarian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, et al. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 Issue
Whether Plaintiff is entitled to retroactive eligibility for Long Term Care Medical Assistance for the Application filed February, 1999.
 Applicable Law
Plaintiff disputes the Hearing Officer's finding that she is not entitled to retroactive eligibility for long term medical assistance. Plaintiff contends that she is entitled to receive benefits to pay nursing home bills that exceed her resources. She seeks assistance to pay nursing home expenses that were outstanding as of April 1, 1999, the date she was approved for assistance. Plaintiff's bank balances first dropped below the $4,000 maximum limit in mid-March, 1999. However, for several months prior to that time, Plaintiff's assets did not exceed her outstanding allowable expenses by $4,000.
McMullen acknowledges her failure to comply with the requirements of DHS regulations, but contends that strict adherence with those requirements will contravene the purpose of the medical assistance legislation and will deprive Plaintiff of legal rights.
DHS is an agency within the Executive Branch of state government. R.I.G.L. 1956 § 42-12-1, et seq. In accordance with its statutory mandate, DHS is responsible for the management, supervision and control of various social service programs. It manages the state and federally funded public financial assistance programs. R.I.G.L. 1956 § 42-12-4.
General Laws § 40-8-1, et seq establishes the State of Rhode Island Medical Assistance Program. Pursuant to statutory authority, DHS administers this program and has promulgated rules and regulations to carry out the policies and purposes of the Act. R.I.G.L. 1956 §40-8-13.
Among those regulations are those that set forth the eligibility requirements for medical assistance. Department of Human Services Regulations 0354.05 and 0354.40, provide, in pertinent part:
 RESOURCE LIMITS 0354.05 REV: 06/1994
 Each determination of eligibility (new, reopening or redetermination) requires a review of resources, which includes sending three bank statements (AP-91). Resources are also reviewed at the time of a reported change, or when information is received which indicates a change has occurred, or that unreported resources may exist (income Eligibility Verification System match, etc.) Resources must be verified by a review of documents related to the resource, with copies of the documentation kept for the case file. . . .
 MEDICALLY NEEDY RESOURCE LIMITS — ALL GROUPS
 RESOURCE INDIVIDUAL Basic limit $4,000
 RESOURCE REDUCTION 0354.40
 REV: 06/1994
 If an applicant . . . is found to be ineligible due to excess countable resources as of the first moment of the month, s/he is notified that eligibility does not exist via the InRHODES Eligibility Notice. Included with the Notice is a description of the possibility of resource reduction (form MA-6).
An applicant whose countable resources exceed the basic resource limitation may establish eligibility on the basis of resources if:
 S/he incurs (or has incurred) outstanding allowable medical bills or other allowable expenses that equal or exceed his/her allowable medical bills or other allowable expenses that equal or exceed his/her excess resources;
 AND,
 S/he reduces the excess resources to the appropriate resource limit by actually paying the allowable expenses or fees, and submitting verification thereof within thirty days of the date of the rejection or closing notice. Both the expenditure of the resource and submission of verification of the expenditure and the reduced resource must occur within the thirty day time period. The bills used to establish eligibility cannot be incurred earlier than the first day of the third month prior to the date of an application that is eventually approved. Allowable bills, which the applicant has paid and used to reduce resources, may not be the same bills that have been used to meet an income spendown . . .
 RETROACTIVE COVERAGE 0310.05 REV: 06/1994
 Medical Assistance applicants may seek retroactive eligibility for UP TO THREE MONTHS PRIOR TO THE MONTH OF APPLICATION. To obtain retroactive coverage, applicants must meet all eligibility criteria during the retroactive period . . .
Under these regulations, Plaintiff could have applied for retroactive eligibility once her application was approved if during the three month period prior to the approval, she met the eligibility requirements. In this case, Plaintiff established eligibility as of April 1, 1999 after she contracted for a funeral and paid an outstanding nursing home bill. During the three months prior to her approval, her bank balances continuously exceeded four thousand dollars. DHS maintains that because her bank balances exceeded four thousand dollars during those months, she is ineligible for retroactive eligibility.
Plaintiff's bank balance was $12,952.15 as of the date of her February application. (Tr. at 8.) Although Plaintiff's bank balances exceeded four thousand dollars throughout January, February and part of March 1, 1999, she was then indebted to Brentwood Nursing home for outstanding monthly fees.
DHS never actually approved her application for assistance. The March 22, 1999 letter from DHS was not an approval. It was a reply to her second submission advising her that she had not cured the deficiencies that resulted in the denial letter of February 19, 1999. The Hearing Officer determined that Plaintiff was entitled to benefits as of April 1, 1999, but that was not actually the issue on appeal. In her March 22, 1999 letter to McMullen, Ms. Azzarone suggested that the Plaintiff ". . . may be eligible for 4/99 on financially. If you want us to consider 4/99 on, please send in a computer printout of balances as of 4/1 before 4/8/99 or a new referral will be needed." (DHS Letter, March, 22, 1999.) McMullen did not submit any additional materials to DHS, and no new referral was made.
To the extent that Plaintiff seeks review of the decision concerning the denial of her February application for assistance, it is clear that she had not complied with DHS regulations in submitting that application. Her assets exceeded $4,000. She did not cure that deficiency when she contracted for her aunt's funeral because the burial fees were not outstanding in February.
Assuming that the March 22, 1999 letter can be construed as an approval of an application for benefits effective April 1, 1999, Plaintiff still would not be entitled to retroactive relief under a strict interpretation of DHS regulations. To qualify for retroactive benefits, applicants must meet all eligibility criteria during the retroactive period. Plaintiff was technically ineligible for assistance until April 1, 1999, the beginning of the next month following the date when her bank balances dropped to $4,000. Her bank balances exceeded $4,000 until she paid the November, 1998 nursing home bill on March 17, 1999. (Tr. at 7-13.)
McMullen was either confused or careless as she attempted to obtain medical assistance for her aunt. Had she acted prudently, her aunt would not be faced with outstanding nursing home charges. The result is harsh and arguably inconsistent with the purpose of the legislation. Plaintiff contends that the decision contravenes the legislative intent of state and federal medical assistance laws because it requires Plaintiff to use resources which would bring her assets below the amount established as a test of eligibility under the state plan.
In support of this argument, Plaintiff relies on a Connecticut case, Matarazzo v. Rowe, 623 A.2d 470, 481 (Conn. 1993). Although perhaps factually similar to the instant case, Matarazzo was based upon Connecticut law. Rhode Island's eligibility requirements are consistent with determinations under federal law, SSI requirements. Plaintiff's problem lies not with the applicable regulations, but with McMullen's failure to comply with them.
DHS applied its regulations literally when processing Plaintiff's application of February, 1999. The Hearing Officer likewise strictly construed those regulations. Under the regulations, Plaintiff was not entitled to retroactive assistance. It is clear that DHS regulations have produced a harsh result where the Plaintiff's ineligibility for retroactive assistance was caused by her niece's carelessness or confusion. McMullen is not an attorney. Yet she represented the rights of her aunt, an elderly, disabled woman and represented her poorly.
The purpose of the legislation creating the medical assistance program is thwarted when those otherwise eligible for benefits are denied due to their misplaced reliance on an unskilled family member to adequately represent their interests. The Act provides in pertinent part:
 40-8-1 Declaration of Policy — (a) Whereas, in the state of Rhode Island there are many persons who do not have sufficient income and resources to meet the cost of medical care . . . (b) Whereas, it is in the best interest of all the citizens of this state to promote the welfare of persons with the characteristics of persons eligible to receive public assistance and ensure that they will receive adequate medical care and treatment in time of need; (c) Now, therefore, it is declared to be the policy of this state to provide medical assistance for those persons in this state who possess the characteristics of persons receiving public assistance . . .who do not have the income and resources to provide it for themselves or who can do so only at great financial sacrifice . . . R.I.G.L. 1956 § 40-8-1.
The resulting loss of potential benefits standing alone will not justify disregarding clearly established rules and regulations. A disabled person may be penalized for the failures of those who assume responsibility to file for his or her benefits. In re Kurzyniec Estate v. Department of Social Services, 526 N.W.2d 1919 (Mich. 1994). In Kurzyniec, those assisting a disabled individual applying for medical assistance benefits failed to act promptly. As a result of the delay, his application was considered under a new eligibility policy, and the applicant was denied retroactive benefits because he did not meet the asset requirements during the retroactive period. Under the previous policy, an applicant was entitled to retroactive benefits for the three months preceding his application even if he did not meet the asset requirements during those months. The Court upheld the agency determination denying him consideration under the prior eligibility policy. The applicant was denied retroactive benefits because he did not meet the asset requirements during the retroactive period.
In Kurzyniec, the new eligibility policy was valid and did not conflict with the purpose of the medical assistance legislation even if the applicant could have achieved a more favorable ruling under the prior rule. In this case, Plaintiff would have qualified for retroactive benefits under the applicable regulations but for the failure of McMullen to act with due care. In Kurzyniec, strict adherence with regulations and policies did not thwart the purpose of the Medical Assistance Act. Here, it does.
In passing the Medical Assistance Act, the Rhode Island General Assembly did not envision severely penalizing a disabled elderly patient because her niece failed to adhere to the strict requirements of DHS regulations. It is undisputed that Plaintiff is without resources to pay the outstanding nursing home charges, and that those charges would have been allowable expenses but for her niece's error. Plaintiff is clearly among those persons the Legislature sought to protect in creating the Medical Assistance Act. She is a citizen of this state who does not have sufficient income and resources to meet the costs of her long term health care. The decision of the Hearing Officer is too harsh and violates the legislative intent of the Medical Assistance Act.
Had McMullen followed DHS regulations, she would have reduced Plaintiff's bank balances by paying her nursing home charges as they became due. She would have been permitted to reduce the resources further by contracting for her burial. On the first day of the next month following the date that the bank balances dropped to $4000, Plaintiff would have been eligible for assistance. If McMullen had reduced Plaintiff's resources to $4000 before filing the February application, Plaintiff would have been entitled to benefits retroactive to the date of her eligibility. If McMullen had acted prudently, it is likely that Plaintiff would have been eligible for assistance as early as December 1, 1998, and certainly by January 1, 1999.
McMullen explains that she failed to address her aunt's financial situation before February, 1999 because she had personal work obligations during the busy retail season. However, she offers no explanation whatsoever as to why she failed to follow the clear and unambiguous instructions included with the February 19, 1999 denial letter. The Court is most concerned about the prejudice Plaintiff suffered because her niece did not attempt to establish eligibility by the means set forth in that letter.
Had McMullen merely followed the instructions provided in the denial letter, she would have applied all amounts on deposit in excess of $4,000 toward paying outstanding nursing home fees. She probably would have paid the charges for November, December and at least part of January. It was then too late to contract for burial expenses to reduce Plaintiff's assets for February, 1999. Had she complied with the instructions on the February 19, 1999 denial letter, Plaintiff would have been approved for benefits retroactive to the date of eligibility. Plaintiff would have received assistance for nursing home fees incurred for February, 1999 and March, 1999.
In requiring strict compliance with the regulations, under the circumstances of this case, the Hearing Officer disregarded pertinent evidence. By February, 1999, Plaintiff's resources were far below $4,000 when considered in light of her outstanding allowable unpaid expenses. The Hearing Officer ignored undisputed evidence establishing that the Plaintiff would have been eligible for benefits if she had received adequate assistance filing her application. She failed to consider Plaintiff's age and helpless condition and penalized her for the failure of others. Her decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.
The Hearing Officer's literal interpretation of DHS regulations was inconsistent with the purpose of the Medical Assistance Act, and was thus, affected by error of law. The Court may freely review questions of law to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458.
 Conclusion.
For the foregoing reasons, Plaintiff's appeal is granted. Plaintiff is eligible for retroactive benefits as though her niece had followed the instructions set forth in the letter from DHS dated February 19, 1999. Plaintiff is entitled to the same benefits she would have been received if McMullen had reduced her bank balances to $4000 by using the money to pay outstanding nursing home fees and had provided DHS with appropriate documentation verifying that she had done so within thirty days of February 19, 1999. For purposes of determining when Plaintiff became eligible for assistance, DHS shall assume that her bank balances as of February 1, 1999 were $12,952.15 and that she had not paid nursing home fees for November, 1998, December, 1998, January, 1999 or February, 1999. In calculating Plaintiff's eligibility, the parties shall not consider the amount of the funeral expenses because the burial contract was not entered into until mid-March, 1999.
Counsel shall present an order consistent with this decision.