DECISION
This civil action is an administrative appeal wherein Sally Gravino and Club Tropics, Inc. d/b/a/ Club Tropics (collectively Club Tropics) appeal a decision of the Department of Business Regulation (DBR) upholding a decision of the City of Warwick Board of Public Safety (Board) revoking a Class B-V alcoholic beverage license (license) for violation of R.I.G.L. § 3-5-23. This Court possesses jurisdiction pursuant to R.I.G.L. §42-35-15.
 FACTS AND TRAVEL
On October 7, 1996, the Board issued a license to Club Tropics for the facility located at 885 Oakland Beach Avenue, Warwick, Rhode Island. Relevant to this disposition, Club Tropics operates as an "all ages" facility on Friday nights and as an "ages eighteen and over" facility on Saturday nights. On December 10, 1996, the Board held a hearing to address complaints from citizens residing in the Oakland Beach area (neighborhood residents) of the City of Warwick (City) with regards to reported disturbances at Club Tropics. The Board continued this hearing to January 28, 1997, after which the Board voted and decided to revoke the license.[1]
On January 29, 1997, Club Tropics appealed this decision of the Board to the DBR pursuant to R.I.G.L. § 3-7-21. The DBR held a hearing de novo on February 5th, 6th, 10th, 11th, 12th, and 13th of 1997, and heard testimony concerning the disorderly conduct of patrons both inside and outside the Club Tropics facility. Specifically, in addition to receiving the police reports reviewed by the Board, the DBR heard testimony from police officers of the City concerning eight separate instances of fights and disorderly conduct among the patrons of Club Tropics. The DBR also heard testimony from neighborhood residents concerning the negative and disturbing affect that the conduct of the patrons of Club Tropics has had upon the surrounding residential community. See Final Decision of the DBR, In TheMatter of Tropics, Inc., d/b/a Club Tropics v. City of Warwick,Board of Public Safety, LCA-WA-97-05, February 28, 1997.[2]
Club Tropics does not dispute the factual findings made by the DBR concerning the occurrences of fighting and disorderly conduct by patrons of Club Tropics. The DBR has set out their findings in detail in the DBR Decision. Id.
However, Club Tropics does argue that the DBR made an error of law by applying incorrectly the liquor license revocation standards as delineated in R.I.G.L. § 3-5-23 and interpreted by our Supreme Court in Cesaroni v. Smith, 98 R.I. 377,202 A.2d 292 (1964) and Manuel J. Furtado, Inc. v. Sarkas, 118 R.I. 218,373 A.2d 169 (1977). Club Tropics argues, and this is not disputed by the record evidence, that they maintained security personnel and hired detail police officers of the City on Friday and Saturday nights in response to continued fights and disorderly conduct among the patrons inside and outside Club Tropics and in response to complaints by the neighborhood residents. Club Tropics argues that the record contains undisputed testimony that the managers of Club Tropics notified the police when a fight or disturbance occurred among the patrons and that their security personnel and managers were cooperative with the police officers and open to suggestions on how to address the problems of fighting and disorderly conduct. Thus, Club Tropics asserts that they did not "permit" the disorderly conduct and neighborhood disturbances as required by R.I.G.L. §3-5-23 for the Board to revoke the liquor license.
In response, the DBR argues that in addition to the seventeen police reports relied upon by the Board, the DBR supports their Decision with credible testimony concerning eight separate instances of fights and disorderly conduct among the patrons of Club Tropics inside and outside the licensed premises. Additionally, the DBR heard testimony by police officers that the cause of these disturbances necessarily was not the need for additional security personnel or detail police officers at Club Tropics, but rather was the successful marketing and operational design of Club Tropics as "all ages" on Friday nights and "ages 18 and over" on Saturday nights. The police testified, and the Board and the DBR concluded, that Club Tropics permitted the disorderly behavior by continuing to promote the facility on Friday and Saturday nights to teenage persons. The DBR also concluded that although Club Tropics has addressed the fights and disorderly conduct among patrons by hiring security personnel and detail police officers, Club Tropics has neither maintained order among the patrons nor solved the disturbance problem, as their "ability to control these activities is dubious at best." Id.
at 20. The DBR asserts that the record contains sufficient evidence to support the DBR's holding that Club Tropics has permitted the fighting and disorderly conduct and that this conduct has created a disturbance and annoyance to the neighborhood residents in violation of the relevant provisions of the statute. The DBR also stated in the Decision that "[s]hould [Club Tropics] agree to adopt a business format prohibiting persons younger than 21 years of age from entering the premises during evening hours on Friday and Saturday nights, it is of course free to re-petition (sic) the Board for consideration of reinstatement of licensure." Id. at 22.
 STANDARD OF REVIEW
This Court will review the decision of the DBR pursuant to R.I.G.L. § 42-35-15 (g), which provides that when reviewing a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency with regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict ofInterest Commission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the DBR's decision. Newport Shipyardv. Rhode Island Commission for Human Rights, 484 A.2d 893 (R.I. 1984). `Substantial evidence' is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quotingCaswell v. George Sherman Sand Gravel Co., 120 R.I. 1981,424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). Questions of law, however, are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflict of InterestCommission, 509 A.2d at 458. This Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public TelecommunicationsAuthority v. Rhode Island Labor Relations Board, 650 A.2d 479, 485 (R.I. 1994). A distinction exists between the guidelines governing the issuance of liquor licenses, as opposed to their suspension, revocation or renewal. See Casala v. Dio,65 R.I. 96, 99, 13 A.2d 693, 695 (1940). In order for this Court to uphold the suspension or revocation of a liquor license, there must be a showing that the holder has breached some applicable rule or regulation. R.I.G.L. § 3-5-21.
 CLUB TROPICS HAS VIOLATED THE PROVISIONS OF R.I.G.L. § 3-5-23
After thorough review of the whole record and consideration of the memorandums of law submitted by the parties, this Court makes the following findings of fact and conclusions of law. Although the parties do not dispute the factual findings made by the DBR, for the record, this Court concludes that the factual findings, inferences, and credibility determinations made by the DBR are supported by sufficient documentary and testimonial evidence contained in the whole record. The DBR heard extensive and detailed testimony from police officers and neighborhood residents describing the fighting and disorderly conduct by patrons inside and outside Club Tropics. The neighborhood residents also described the disturbances within the neighborhood as a result of the fighting and disorderly conduct. This testimonial evidence and the factual findings made by the DBR are recounted in detail in the DBR Decision and are hereby adopted by this Court in making the determination herein. See FinalDecision of the DBR, In The Matter of Tropics, Inc., d/b/a ClubTropics v. City of Warwick, Board of Public Safety.
In the memorandum of law submitted to this Court, Club Tropics focused their argument on whether Club Tropics has "permitted" the disturbance by allowing the fighting and disorderly conduct among their patrons, thus violating the provisions of R.I.G.L. § 3-5-23. Club Tropics proffers that the record contains undisputed evidence that they proactively responded to the disturbance problem by hiring additional security personnel and detail police officers. Club Tropics also asserts that the record shows they cooperated with the police officers in handling the incidences of fighting and disorderly conduct among the patrons and were concerned about the disturbance in the neighborhood. Therefore, Club Tropics argues that the conclusion of the DBR that Club Tropics violated the relevant provisions of R.I.G.L. § 3-5-23 is an error of law.
R.I.G.L § 3-5-23, entitled "Revocation of license for criminal offenses or disorderly conditions — Action on bond" states in pertinent part, that:
 [i]f any licensed person shall permit the house or place where he or she is licensed to sell beverages under the provisions of this title to become disorderly so as to annoy and disturb the persons inhabiting or residing in the neighborhood thereof, . . . he or she may be summoned before the board, body or official which issued his or her license including before the Department, when he or she and the witnesses for and against him or her may be heard; and if it shall be made to appear to the satisfaction of the board, body or official hearing such charges that he or she has violated any of the provisions of this title or has permitted to be done any of the things hereinbefore in this section mentioned, then the board, body or official may suspend or revoke his or her license or enter other order thereon. . . .
As Club Tropics has argued to this Court, our Supreme Court has interpreted R.I.G.L. § 3-5-23 and has provided extensive guidance in applying its standards, stating that:
 the legislature, in enacting the pertinent provision of the statute, intended to impose upon such licensee the obligation to maintain an efficient and affirmative supervision over the conduct of his patrons in his place to such an extent as is necessary to maintain order therein. It is our opinion that as a practical matter a licensee assumes an obligation to affirmatively supervise the conduct of his patrons so as to preclude the generation therefrom of conditions in the neighborhood of like character to conditions that would result from maintenance of a nuisance therein. . . .
 The word `disorderly as used here contemplates conduct within premises where liquor is dispensed under a license that causes either directly or indirectly conditions in the neighborhood in the annoyance of or disturbing to the residents thereof. . . . It is our opinion that the legislature, in enacting this statute, intended to condition the continued operation of establishments under these licenses on the ability of the licensee to prevent the occurrence of conditions therein which either act directly on the sensibilities of the neighbors or which, by giving rise to conduct outside the premises, by indirection offend the sensibilities of the neighbors.
Cesaroni v. Smith, 98 R.I. 382-384, 202 A.2d 295-296 (Emphasis added.). Moreover, our Supreme Court also has recognized that "[e]ven though the responsibility may be onerous, a licensee agrees to assume such an obligation by it acceptance of the license." Schillers, Inc. v. Pastore, 419 A.2d 859 (R.I. 1980).
Although Club Tropics: 1) maintained security personnel and hired detail police officers in response to the fighting and disorderly conduct of the patrons, 2) cooperated with the police officers in handling the disturbances, and 3) was concerned about the resulting disturbance to the neighborhood residents, these facts are not dispositive of whether Club Tropics violated the relevant provisions of the statute. Club Tropics maintains an affirmative duty to supervise patrons and to maintain order inside and outside the facility. See also Manuel J. Furtado,Inc. v. Sarkas, 118 R.I. 218, 373 A.2d 169. As outlined above, the record provides substantial facts, not disputed by Club Tropics, to support the DBR's conclusion that Club Tropics was neither able to prevent these disturbances nor maintain order within its present operating format of "all ages" on Friday nights and "eighteen and over" on Saturday nights. This Court finds that the record contains substantial evidence that the patrons of Club Tropics had become disorderly inside and outside the facility on aforesaid occasions and that this conduct resulted in disturbances to the neighborhood residents. Therefore, this Court concludes that Club Tropics breached their duty to maintain order over their patrons and "permitted" such disturbances to the neighborhood residents in violation of R.I.G.L. § 3-5-23.
 CONCLUSION
After thorough review of the entire record, this Court finds that the Decision of the DBR neither constitutes an error of law nor an abuse of discretion and that substantial rights of Sally Gravino and Club Tropics, Inc. have not been prejudiced. The DBR had substantial evidence before it to conclude that the patrons of Club Tropics, both inside and outside the licensed premises, had become disorderly and disturbing to the neighborhood residents and that Club Tropics had failed in its duty to keep the premises operating in an orderly manner as required by R.I.G.L. § 3-5-23. Accordingly, the February 28, 1997, Decision of the DBR is affirmed.
Counsel shall submit an appropriate Judgment for entry in accordance herewith, within ten days.
[1] At this hearing, the Board reviewed seventeen police reports, for the period June 1996 through December 1996, involving disorderly conduct, such as brawling and quarreling, by patrons inside and outside Club Tropics.
[2] In summary, the DBR heard testimony from police officers of the City who described fights and disorderly conduct among the patrons of Club Tropics inside and outside the facility which occurred on the following dates during calendar year 1996: June 16 and 22, July 5 and 21, September 1, November 8 and 24, and December 27. The police officers described incidences wherein fighting and disorderly conduct would occur among groups of patrons. For example, the DBR heard testimony that during the December 27th incident, up to thirty people were fighting and screaming inside and outside the facility and that eleven police officers and a "paddy wagon" were needed to handle this disturbance and to make arrests.
The police officers testified that these incidences were often related to different ethnic groups of teenage patrons fighting with one another. The police officers also testified that the teenage patrons of Club Tropics often assaulted police officers during these incidences of fighting and that the officers often feared for their safety. Additionally, the police officers testified that police personnel and resources were utilized from other areas of the City to assist the detail officers on duty at Club Tropics in handling the larger incidences of fighting among the patrons and that the repeated need for police response to Club Tropics creates a shortage of police officers in other areas of the City.
The police also received complaints about Club Tropics from the neighborhood residents. The DBR heard testimony from neighborhood residents describing ongoing instances of disturbances in the neighborhood as a result of Club Tropics. These witnesses testified that the teenage patrons of Club Tropics often congregate along the seawall at Oakland Beach and in the Club Tropics parking lot, consume alcoholic beverages, urinate in public, and then proceed into Club Tropics. Additionally, these witnesses described the regular occurrence of teenage patrons operating motor vehicles in excess of the speed limit either arriving at or leaving from Club tropics. The witnesses also testified that the fighting and disorderly conduct among the patrons and the ongoing need for police response to Club Tropics creates an additional disturbance in the neighborhood.