[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The City of Warwick ("City") appeals the sanction imposed against Warwick Police Officer, David Kelly ("Kelly") by a Hearing Committee formed under the Law Enforcement Officers' Bill of Rights. The City maintains that Kelly should have been terminated, not merely suspended for six-months without pay. Kelly, for his part, appeals the Hearing Committee's determination that he was guilty of conduct unbecoming a police officer and also appeals the penalty portion of the Committee's findings. These cross-appeals stem from an incident of sexual contact between Officer Kelly and a 17-year old female cadet in the Warwick Police Explorer Program. On July 1, 2004, the Hearing Committee found Officer David Kelly guilty of conduct unbecoming a police officer and suspended him without pay for a period of six months. He was ordered to successfully complete an accredited class dealing with ethical standards in law enforcement.
This Court has jurisdiction over these cross-appeals pursuant to §§42-28.6-12 and 42-35-15 of the General Laws of Rhode Island 1956, as amended.
 Facts
The Warwick Police Department offers a program in association with the Boy Scouts of America Learning for Life Program called the Explorers' Program. This internship program provides participants ages 14-21 with an introduction into the field of law enforcement. Cadets meet at the Warwick Police Department once a week during the school year. Police officers work with the Cadets teaching them various aspects of police work and giving them the opportunity to perform clerical and other limited activities at the police station. Not all officers serve as mentors for the program, but every member of the police department is aware of their presence. (Tr. of June 1, 2004 hearing at 67, 68, 69.) The cadets are readily identified by the special uniforms they wear which distinguish them from other members of the Department. (Tr. of June 1, 2004 hearing at 28.)
In August, 2003, a 17-year old female cadet in the Explorer Program sent an email to a Warwick police detective wherein she identified several police officers with whom she allegedly had sexual contact. Kelly was one of those officers. (Tr. of June 1, 2004 hearing at 73.) She and Kelly met at the police station while she was working in the program. They had no prior relationship. Kelly was not involved in mentoring the cadets, but was aware of their role at the police station and recognized the subject cadet as a participant in the Explorer Program. (Tr. of June 1, 2004 hearing at 28.) Kelly was familiar with the Explorer program although he did not have any active involvement with the cadets. (Tr. of June 1, 2004 hearing at 64, 65, 65.)
At times pertinent hereto, Kelly was on the Warwick Police Department for at least four years. (Tr. of June 1, 2004 hearing at 27.) He testified that he met the cadet when she was performing clerical work in the Traffic Office while wearing her Explorer Cadet uniform. (Tr. of June 1, 2004 hearing at 31, 32.) They exchanged small talk and telephone numbers. He was aware of her age. (Tr. of June 1, 2004 hearing at 32, 33.) He also knew that she was a high school student. (Tr. of June 1, 2004 hearing at 38.) Kelly telephoned the cadet after their initial meeting, and they arranged to meet at his house for brief encounter that involved sexual intercourse. On that occasion, she also performed oral sex on him. (Tr. of June 1, 2004 hearing at 34, 35.)
The meeting was in the middle of the day and lasted only an hour because she had to return to the police station to go on a ride-along that afternoon. (Tr. of June 1, 2004 hearing at 35.) Kelly denied any further sexual contact with the cadet and claims that they did not engage in any sexual activity on the job. (Tr. of June 1, 2004 hearing at 35, 38.)
Kelly denies that he told any of his fellow officers about the encounter. (Tr. of June 1, 2004 hearing at 39.) The record does not include any evidence as to whether or not Kelly was aware that his fellow officers also may have engaged in sexual contact with the same cadet.
Prior to the subject complaints, the Warwick Police Explorers' Program was considered a model for other departments. (Tr. of June 1, 2004 hearing at 86.) After the allegations of sexual contact between police officers and the cadet surfaced, the Explorers program was suspended and reorganized. To avoid similar incidents, a committee of public members now oversees the police advisors and the program in general. (Tr. of June 1, 2004 hearing at 88.)
Warwick Police Chief Stephen McCartney filed a departmental charge against Officer Kelly alleging conduct unbecoming an officer. McCartney alleged that Kelly brought discredit to himself, his fellow officers and the Warwick Police Department by engaging in sexual relations with the 17-year old cadet. For these charges, Chief McCartney recommended that Kelly be terminated from the department.
Pursuant to the Law Enforcement Officers' Bill of Rights, Kelly sought and received a hearing before a duly selected three-member Hearing Committee. Officer Kelly testified at the hearing as did Major Joseph H. Tavaras. At times material to the subject controversy, Tavaras was the Internal Affairs Captain for the Warwick Police Department.
After the hearing, the Committee issued a unanimous decision finding Kelly guilty of the charge of conduct unbecoming an officer, but modified the Police Chief's termination order, instead suspending Kelly for six (6) months without pay. In so finding, the Committee cited Warwick Police Department Rules and Regulations which prohibit an officer from conducting himself or herself . . . "in a way which reflects discredit upon his or her fellow officers or upon the police department." (Decision of Hearing Committee, July 1, 2004 at page 2.) After reviewing the facts of the case, the Committee concluded that "It was very obvious to the hearing committee that this behavior on the part of Officer Kelly brought discredit to the Warwick Police Department and its members, the Boy Scouts of America Learning for Life Explorer Program, and to Officer David Kelly himself." (Decision of Hearing Committee, July 1, 2004 at page 3.)
Aside from the six month suspension without pay, they also ordered that Kelly could not be reinstated until he successfully completed an accredited class dealing with ethical standards of law enforcement and that he must enroll in such class at his own expense. (Decision of Hearing Committee, July 1, 2004.) In rejecting the Chief's recommendation to terminate Kelly, the Committee warned that ". . . police officers should be held to a higher standard and that if this type of behavior is repeated, this officer should be terminated." (Decision of Hearing Committee, July 1, 2004 at page 3.)
The Department appeals the Committee's decision to this Court pursuant to G.L. 1956 § 42-28.6-12 claiming error by the Committee in the penalty portion of its decision. Kelly appeals the Committee's decision claiming error by the Committee in its finding of conduct unbecoming an officer and as to the penalty aspect of its decision.
 Standard of Review
"The Law Enforcement Officers' Bill of Rights is the exclusive remedy for permanently appointed law enforcement officers who are under investigation by a law enforcement agency for any reason that could lead to disciplinary action, demotion or dismissal." City of East Providencev. McLaughlin, 593 A.2d 1345 (R.I. 1991). An officer facing departmental charges may request a hearing before a Hearing Committee composed of three active law enforcement officers. G.L. 1956 § 42-28.6-1 and 42-28.6-4. The Hearing Committee has broad discretion to modify in whole or in part the sanctions that the charging authority recommends and is not bound by the recommendations of the officer's departmental superiors. Culhane v.Denisewich, 689 A.2d 1062 (R.I. 1997). Appeals from the decisions of such Hearing Committees are taken pursuant to G.L. 1956 § 42-28.6-12, which provides that the Hearing Committee "shall be deemed an administrative agency and its final decision shall be deemed a final order in a contested case within the meaning of §§ 42-35-15 and 42-35-15.1."
Section 42-35-15(g) of the General Laws governs this Court's review of a decision of the Hearing Committee. This section provides:
 "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision, this Court may not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of evidence concerning questions of fact. Ctr.For Behavioral Health, R.I., Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998). This Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipmentv. R.I. Comm'n for Human Rights, 484 A.2d 893 (R.I. 1984). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla, but less than a preponderance. Id. at 897. Even where a court might be inclined to impose a more severe punishment, it is not the prerogative of the court to substitute its judgment for that of the Committee. Culhane at 1065. This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the records." Milardo v. Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981). Questions of law, however, are not binding on a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflict of InterestsComm'n., 509 A.2d 453, 458 (R.I. 1986). If competent evidence supports the Commission's findings and conclusions, this Court is required to uphold them. R.I. Pub. Telecomms. Auth. v. R.I. Labor Relations Bd.,650 A.2d 479, 485 (R.I. 1994). "[L]egally competent evidence is marked `by the presence of "some" or "any" evidence supporting the agency's findings.'" State v. R.I. State Labor Relations Bd., 694 A.2d 24, 28
(R.I. 1997).
 The Finding of Conduct Unbecoming a Police Officer
Kelly appeals the Hearing Committee's decision finding him guilty of conduct unbecoming an officer. He argues that Warwick Police Department rules, regulations, policies and procedures fail to set forth a clear and unambiguous "No Fraternization" policy between members of the police department and participants in the Explorer Program. Kelly concludes that absent such a specific prohibition, the decision of the Hearing Committee penalizing him for such fraternization constitutes action which was arbitrary, capricious and against the great weight of evidence presented at the administrative hearing.
The Hearing Committee made its findings on undisputed facts. Kelly does not deny the behavior alleged. Instead, he puts his own spin on the events to suggest an off-duty consensual relationship between responsible persons of legal age. He refers to the Warwick Police Department as holding itself out as the "morality" police and argues that the Department's position in this matter leaves officers of ordinary and reasonable sensibilities to wonder whether they might be disciplined for lawful off-duty behavior.
Kelly's argument fails. This is not a situation where the Police Department has imposed its own moral standards on its officers leaving them guessing as to what lawful conduct might offend them. The facts are clear, and the Hearing Committee was justified in drawing reasonable inferences from those established facts. Kelly took advantage of a vulnerable young woman who was overly eager to please an officer. He traded on the prestige and power of his position to take advantage of an impressionable teenager who should have been mentored and protected by Kelly and his fellow officers, not treated as an object for Kelly's personal sexual gratification. This was not a dating relationship. For whatever reason, Kelly got the impression that the young cadet would agree to accommodate his sexual desires. She took a relatively quick mid-day break, drove to his home, performed oral sex on him, had intercourse with him, and then returned to the station to continue with the program. His conduct in connection with inviting such an encounter reflected adversely on the integrity of his department. It was reasonably foreseeable that if the public learned of the events, that his conduct would not only jeopardize the future of the Explorer Program, but would also undermine public confidence in law enforcement officers and his own police department.
The Hearing Committee correctly found that Officer Kelly brought discredit to his department and to himself and as such, his conduct clearly was unbecoming a police officer. For the foregoing reasons, the Court rejects Kelly's contentions and upholds the Hearing Committee's finding that Kelly was guilty of conduct unbecoming a police officer.
 The Six-Month Suspension Without Pay
Kelly contends that the proscribed punishment is disproportionate and excessive. The City argues that while the Committee correctly found Kelly's conduct unbecoming that of an officer which brought discredit and disrepute upon the Warwick Police Department, its six-month suspension of Kelly was clearly in error since there was no correlation between the suspension and the findings. The City suggests that Kelly's conduct with the 17-year old cadet was so reprehensible that it deserved the termination penalty recommended by the Police Chief.
Kelly's conduct was disgusting. No matter how he characterizes it, he engaged in sexual relations with a 17-year old who was participating in a Police Cadet Program. Clearly, the imposition of a six-month suspension was not excessive. The Court rejects Kelly's effort to reverse that sanction.
In determining the City's argument that the six-month suspension was inadequate, the Court cannot substitute its own judgment for that of the Hearing Committee. Had the Court decided this case de novo, it may have imposed a more severe punishment. However, the standard of review does not permit the Court to modify the sanction imposed by the Hearing Committee so long as substantial evidence exists to support the decision. See Culhane v. Denisewich, at 1065. The Court reviews the penalty or sanction phase of the findings in the same manner that this Court reviews any agency decision. Culhane, Id.
After review of the entire record, the Court finds that the imposition of a six-month suspension without pay for this reprehensible, but single incident of misconduct, was not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, nor was it arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion. Accordingly, because substantial evidence exists to support the sanction, the Court rejects the City's contention that the penalty was inadequate.
 Conclusion
After a review of the entire record and the memoranda of counsel, this Court finds the Committee's unanimous decision finding Defendant David Kelly guilty of the charge of conduct unbecoming an officer and imposing a penalty of six-months suspension without pay is supported by reliable, substantial and probative evidence contained in the record. Further, its conclusion was not arbitrary, capricious or effected by error of law.
Accordingly, the Hearing Committee's decision is affirmed. Counsel shall prepare an appropriate order for entry.